COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Clements and McClanahan
Argued at Richmond, Virginia


ESTATE OF LEWIS R. HACKLER
                                                            OPINION BY
v.        Record No. 1827-03-2          JUDGE ELIZABETH A. McCLANAHAN
                                                      SEPTEMBER 21, 2004
JANICE W. HACKLER


FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Herbert C. Gill, Jr., Judge

Adrienne George-Eliades (The Eliades Law Firm, P.L.L.C.,
on briefs), for appellant.

Denis C. Englisby (Englisby, Englisby, Vaughn & Englisby,
on brief), for appellee.


The estate of Lewis R. Hackler appeals several rulings arising from a divorce proceeding

between Lewis R. Hackler, deceased, and Janice W. Hackler.  Husband's estate contends that the

trial court:  (1) erred in appointing a conservator during the proceedings; (2) erred by not abating

and/or dismissing the divorce action upon the death of husband; (3) erred in awarding wife

$77,437; and, (4) abused its discretion in awarding conservator's fees, to be paid by husband.

Wife presents an additional question, which is whether appellant failed to timely appeal.  Both

parties have requested attorney's fees and costs.  For the reasons that follow, we affirm in part,

reverse in part and remand for further proceedings consistent with this opinion.

I.  Background

Husband and wife married in 1984 and separated in 1999.  In November 1999, husband

filed a bill of complaint for divorce, and husband sought adjudication of the parties' property

rights.  Wife cross-filed and requested *pendente lite* relief.

On November 15, 1999, the court entered a *pendente lite* order providing, *inter alia*, that husband support wife and provide for her health needs and that the parties be enjoined from selling, disposing, or concealing marital property until further order of the court, except for making reasonable expenditures for living expenses, attorney's fees, court costs and reasonable costs associated with the case.

Almost immediately husband violated the court's orders. Over the next couple of years, the court held several hearings to address husband's failure to abide by the court's *pendente lite* orders and his failure to respond to discovery. Several times, the court ordered husband to pay spousal support and medical bills, to provide health and medical insurance coverage for wife and deliver her medication to her, to desist from selling or otherwise transferring marital assets, and to respond to discovery, including interrogatories and a motion for production of documents.[1] Subsequently, the court twice found husband in contempt. The court entered against husband a rule to show cause, citing

> defendant's continued violations of this Court's previous orders regarding spousal support, health bills of the plaintiff not covered by insurance, dissipation of marital assets, and the defendant's continued failure to answer the discovery previously propounded by the plaintiff in this case, which discovery the defendant has been ORDERED previously by this Court to answer.

The order directed the husband to show cause why the court:

> should not entertain any and all appropriate motions under Rule 4:12 of the Rules of the Virginia Supreme Court, including, but not limited to, appointing a conservator or guardian to manage the

---

[1] The interrogatories requested information with regard to, *inter alia*, tax returns, financial accounts, including savings accounts, checking accounts, money market accounts, certificates of deposit, retirement accounts, stock accounts, bond accounts, trust accounts, etc., real estate, a $5,000 Internal Revenue Service refund check, which husband may have cashed or negotiated by signing wife's signature, and withdrawals husband had made from the financial accounts. The motion for production of documents sought six years of state and federal tax returns and copies of the previous year's statements of any financial accounts in which he had an interest.

marital assets in the control of the defendant until a Final Decree can be entered in this case.

Husband did not appear at the show cause hearing. The court found him in contempt of its previous orders as cited in the show cause order. To remedy the situation, the court appointed a conservator to take receipt of all funds and accounts under husband's control. The court entered a separate order appointing the conservator, which outlined the conservator's duties to receive the funds and accounts under husband's control, maintain an accounting of the accounts, pay husband's obligations as previously ordered by the court, and to provide a monthly report on the accounts to both parties.

After appointing the conservator, the court held several more hearings for status updates and to receive reports from the conservator. In spite of the court's appointment of the conservator, further violations of the court's orders by husband were reported.

Then, in June 2002, it was reported to the court that husband had died and that his son was executor of the estate. Husband's counsel moved for the immediate transfer of the funds under the conservator's control to the estate, arguing that the case was abated due to husband's death. Wife's counsel represented to the court that she would take a nonsuit and pursue the estate, but also argued that the court's orders were still in effect and required further rulings. The trial court denied the motion to abate, continued the matter until September 2002, and ordered counsel to submit letters outlining their respective positions. At that time, the conservator submitted a statement of his fees to the court for $5,700.

Wife submitted that the court could still rule on the contempt dispositions. She contended that in cases of civil contempt for the violation of an injunction the court could impose punishment in the form of a fine or imprisonment or afford the injured party remedial relief for the violations. She requested the court to order remedial damages in the amount of fifty percent of the amount of the funds husband had transferred out of the estate.

Counsel for husband submitted that the divorce action abated upon the death of husband, thus relieving the court of any jurisdiction to make any further determinations in the case, including ruling on the contempt disposition. Husband's counsel asserted that the deceased could not purge himself of contempt and if the court ruled on the contempt disposition, it would punish the estate. Counsel also argued that the court could not determine remedial damages because it had no evidence before it with regard to the precise amounts transferred, the value of the marital estate, or whether the marital estate even exceeded the assets in control of the conservator. Husband's counsel further argued that wife would receive her portion of husband's estate and, therefore, she did not need to be awarded any remedial relief.

After hearing argument on transferring the assets under control of the conservator to the estate, the court issued an opinion letter, dated September 6, 2002, ordering, among other sums, that the conservator pay wife $77,437 in order to purge husband of contempt. The court also ordered the conservator to pay itself $5,700 for its services, and to file a final accounting. Husband's counsel requested a stay of disbursement pending appeal.

The court entered a "Final Order" on January 31, 2003. The order provided that "[a]fter the final accounting [by the conservator] is reviewed and approved by this Court, this Court will end the cause."

In February 2003, husband's counsel moved the court to rule on his stay of disbursement of funds pending appeal. The court granted the request for stay, but ordered the posting of a $100,000 appeal bond.

On June 18, 2003, as a result of an earlier teleconference with the parties, the court ordered the February order abated, denied the motion to stay disbursement of funds, and ordered funds to be disbursed to wife at her request unless and until husband posted a supersedeas bond in the amount of $100,000. The court stated that the order was final for purposes of appeal, but

not for the conservator, whom the court found to be under a continuing duty to file a final accounting once the funds were disbursed according to the court's orders.

Husband's counsel, on behalf of husband, filed a notice of appeal on July 11, 2003. In August 2003, by order of the court, husband's estate was substituted for husband in this matter. The court entered a written statement of facts in September 2003.

## II. Analysis

In her reply brief, wife presents a question on appeal asking whether appellant is properly before this Court because it failed to timely file a notice of appeal after the court's "final order" of January 31, 2003. Wife contends that the January order disposed of all the issues in the case and left only a final accounting by the conservator, effectively ending the cause. Because we must decide wife's question before addressing husband's estate's questions, we discuss it first.

### A. The January 31, 2003 Order Was Not a Final Order for Purposes of Appeal

To perfect an appeal to this Court, an appellant must satisfy the jurisdictional requirements as set forth in the applicable statutes and Rules of the Virginia Supreme Court. In addition to filing a notice with the trial court, Code § 17.1-407, the notice of appeal "shall be filed within thirty days from the date of any final judgment order, decree or conviction." Code § 8.01-675.3; see also Rule 5A:6(a). Otherwise, "[n]o appeal shall be allowed . . . ." Id. Rule 5A:3(a) states that "[t]he times prescribed for filing the notice of appeal . . . are mandatory."

Husband's estate did not file a notice of appeal within thirty days of the entry of the trial court's January 31, 2003 order. However, husband's estate did file an appeal on July 11, 2003, which was within thirty days of the trial court's order of June 18, 2003, which stated that it was to be considered a "'Final Order' for purposes of appeal, should either side wish to appeal . . . ." Because husband's estate did not file a notice of appeal from the January 31, 2003 order, we must decide whether that order was final and appealable.

Rule 1:1 of the Rules of the Virginia Supreme Court states:

> All final judgments, orders, and decrees . . . shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer . . . . The date of entry of any final judgment, order, or decree shall be the date the judgment, order, or decree is signed by the judge.

"Generally speaking, a final order for purposes of Rule 1:1 'is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.'" James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002). See also Daniels v. Truck & Equip. Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964) (citations omitted); Erikson v. Erikson, 19 Va. App. 389, 390, 451 S.E.2d 711, 712 (1994) (citations omitted).

In this case, the trial court signed a document labeled "Final Order" on January 31, 2003. The last paragraph of the order reads: "The Conservator shall then file a final accounting with this Court. After the final accounting is reviewed and approved by this Court, this Court will end the cause." This language indicates that the trial court considered that the cause was still open until it reviewed and approved the conservator's final accounting. At that point in the case, the final accounting was more than just a ministerial action for the purpose of executing the order. The final accounting was crucial with regard to what was in the estate, disbursements made by husband prior to his death, and whether the relief granted by the order was satisfied. The order stated that the court *would end the cause after the final accounting was reviewed and approved*. It did not say that the cause *was ended*.

The court did end the cause in its order of June 18, 2003, stating, "This Order is a 'Final Order' for purposes of appeal, should either side wish to appeal . . . ." At that point, the trial court had stayed any further disbursement of the funds under the conservator's control upon the

posting of an appeal bond. Therefore, the conservator's final accounting was not necessary to ending the cause for purposes of appeal.

Accordingly, we hold that the January 31, 2003 order was not a final, appealable order. Because husband's estate filed a notice of appeal within thirty days of the June 18, 2003 order, we have jurisdiction to consider its appeal.

### B. Husband's Estate's Questions on Appeal

Husband's estate raises four questions on appeal: (1) whether the court erred in appointing a conservator during the proceedings; (2) whether the court erred by not abating and/or dismissing the divorce action upon husband's death; (3) whether the court erred in ruling that wife be awarded judgment in the amount of $77,437 from funds controlled by the conservator; and, (4) whether the court abused its discretion in awarding conservator's fees, to be paid by husband.

### 1. The Trial Court Has Authority to Appoint a Conservator

On November 15, 1999, the court entered a *pendente lite* order providing, *inter alia*, that the parties be enjoined from selling, disposing, or concealing marital property until further order of the court, except for making reasonable expenditures for living expenses, attorney's fees, court costs and reasonable costs associated with the case. Less than one month later, wife moved the court to hold husband in contempt for violating the court's order. On December 9, 1999, the court entered a second *pendente lite* order reaffirming its previous order.

Over the next couple of years, in response to wife's motions to hold husband in contempt for violating the court's orders and failing to respond to discovery, the court entered several more orders requiring husband to: (1) pay spousal support as ordered; (2) pay medical bills and provide health and medical insurance coverage for wife; (3) deliver wife's medication to her; (4) desist from selling or otherwise transferring marital assets; and (5) respond to discovery. The

discovery violations included husband's failure to respond to interrogatories requesting information on tax returns, financial accounts, including savings accounts, checking accounts, money market accounts, certificates of deposit, retirement accounts, stock accounts, bond accounts, trust accounts, etc., real estate, a $5,000 Internal Revenue Service refund check, which husband may have cashed or negotiated by signing wife's signature, and withdrawals husband had made from the financial accounts, and failure to produce documents, including six years of state and federal tax returns and copies of the previous year's statements of any financial accounts in which he had an interest.

On January 16, 2002, the court entered a rule to show cause against husband citing, among other things, the husband's dissipation of marital assets and continued failure to answer the discovery propounded by the wife that he was previously ordered to answer, much of which related to financial issues and marital assets. Husband was to show cause why the court should not entertain motions under Rule 4:12 including appointing a conservator to manage the marital assets in the control of the husband.

Husband did not appear at the show cause hearing, and the court found him in contempt. As a remedy, the court appointed a conservator to take receipt of all funds and accounts under husband's control. The order appointing the conservator required the conservator to receive the funds and accounts under husband's control, maintain an accounting of them, pay husband's obligations as previously ordered, and provide a monthly report on the accounts to both parties.

Rule 4:12 provides that a court in which an action is pending may sanction a party for failure to obey discovery orders. "Rule 4:12 gives the trial court broad discretion in determining what sanctions, if any, will be imposed upon a litigant who fails to respond timely to discovery." Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990). Subsection (b) (2) of the Rule states that the court "may make such orders in regard to the failure as are just" and provides

several options for orders that the court may take. One of the options listed authorizes the court to invoke its contempt powers for failure to comply with discovery orders. Subsection (b)(2)(D) allows the court to enter "an order treating as contempt of court the failure to obey any orders except an order to submit to a physical or mental examination."

A court may find a party in contempt for "[d]isobedience or resistance . . . to any lawful process, judgment, decree or order of the court." Code § 18.2-456(5).

> The power to punish for contempt is inherent in, and as ancient as, courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees, and to preserve the confidence and respect of the people without which the rights of the people cannot be maintained and enforced.

Carter v. Commonwealth, 2 Va. App. 392, 395, 345 S.E.2d 5, 7 (1986) (citations omitted). See also Va. Const. art. IV, § 14; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911); Nicholas v. Commonwealth, 186 Va. 315, 321, 42 S.E.2d 306, 309 (1947); Forbes v. State Council of Va, 107 Va. 853, 856, 60 S.E. 81, 82 (1908); Yoder v. Commonwealth, 107 Va. 823, 828-29, 57 S.E. 581, 585 (1907); Carter v. Commonwealth, 96 Va. 791, 807-08, 32 S.E. 780, 782 (1899); Wells v. Commonwealth, 62 Va. (21 Gratt.) 500, 503 (1871); Wilson v. Commonwealth, 23 Va. App. 318, 322, 477 S.E.2d 7, 8-9 (1996). Upon a finding of contempt, a trial judge has discretionary power to enforce decrees of the court. Code § 18.2-456.

> Courts are clothed with power and charged with the duty of maintaining the dignity of the law. Decrees are mandates of the courts and courts must have power to enforce them if organized society is to be maintained. The degree of punishment for contempt is within the sound discretion of the trial court.

Local 333B, United Marine Div. v. Commonwealth, 193 Va. 773, 786, 71 S.E.2d 159, 167 (1952). An adjudication of contempt will be reversed "only if we find that [the court] abused its discretion." Barnhill v. Brooks, 15 Va. App. 696, 704, 427 S.E.2d 209, 215 (1993) (citing Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 891, 894 (1991)).

"The punishment in a civil contempt proceeding 'is adapted to what is necessary to afford the injured party remedial relief for the injury or damage done by the violation of the injunction to his property or rights which were under the protection of the injunction.'" Rainey v. City of Norfolk, 14 Va. App. 968, 974, 421 S.E.2d 210, 214 (1992) (citing Deeds v. Gilmer, 162 Va. 157, 262, 174 S.E. 37, 78-79 (1934)). Certainly, in a situation where a party is twice found to be in contempt and repeatedly refuses to answer discovery requests relating to asset identification, status, use/misuse and dissipation, the court can, within its discretion, determine that the appropriate Rule 4:12 sanction is to appoint a conservator, which allows both parties access to the financial information sought through discovery and preserves the marital assets from being further dissipated by one party prior to the final decree. It would be anomalous that a chancellor's broad powers of contempt would, as a matter of law, never include the power to appoint an asset manager in cases where such repeated discovery violations relate to asset identification and dissipation.

Moreover, in addition to the authority provided by Rule 4:12, the trial court has authority pursuant to Code § 20-103(A)(vii) to enter *any* order that may be proper during the pendency of a divorce suit in order to preserve the estate.[2] In pertinent part that code section provides:

---

[2] Although wife did not cite Code § 20-103(A)(vii) in support of the court's appointment of the conservator, the appellate court is not required to ignore a correct legal basis in support of the court's judgment. Contrary to the dissent's assertion, Rule 5A:18 does not apply to the appellee because it deals only with grounds asserted as a "basis of reversal" of the trial court's judgment. See generally, Schweiker v. Hogan, 457 U.S. 569, 585 (1982) ("the statutory argument raised by the appellees, although not presented in the District Court, may be decided on the basis of the record developed in that court"); Harris v. Commonwealth, 39 Va. App. 670, 675, 576 S.E.2d 228, 231 (2003) (*en banc*) ("Although the Commonwealth raised this argument for the first time on appeal, we have long held that 'Rule 5A:18 does not require an appellee to raise an issue at trial before it may be considered on appeal, where the issue is not offered to support reversal of a trial court ruling.'" (citation omitted)).

Additionally, under the right-result-wrong-reason doctrine, we should affirm a trial court judgment if it rests on a legally correct rationale even if the trial court expressly rejected that rationale. Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 314 (1992). All

> In suits for divorce, annulment and separate maintenance . . . the court having jurisdiction of the matter may, at any time pending a suit pursuant to this chapter, in the discretion of such court, make any order that may be proper . . . (vii) to preserve the estate of either spouse, so that it be forthcoming to meet any decree which may be made in the suit . . . .

Under this section, the court is authorized to appoint a fiduciary to prevent the dissipation of funds. This statute provides an even broader basis upon which the court is authorized to enter such orders in a pending divorce suit. The clear intent of the General Assembly in enacting Code § 20-103(A)(vii) was to empower the trial courts to prevent dissipation of marital assets during a pending suit, in order to assure that the funds are available to comply with the court's final equitable distribution ruling.

The record supports the trial judge's findings that the services of a conservator were required in this case because husband was continually violating the court's orders, refusing to respond to discovery regarding financial information about the marital assets, and dissipating the estate. Therefore, whether by contempt power authorized by Rule 4:12, or by statutory authority provided by Code § 20-103, the court had the power to appoint the conservator to determine the information wife requested in discovery and to preserve the estate and allow the suit to proceed.

2. The Divorce Proceedings Abated upon the Death of Husband

Husband died before the trial court entered a final decree. Husband's estate argues that the divorce suit abated upon the death of husband and the trial court was therefore divested of its jurisdiction in the proceedings. We agree.

---

the more, we should affirm when the trial court never addressed the legally correct rationale because the winning litigant never advocated it. The only exceptions to the right-result-wrong-reason doctrine involve cases where the right reasons require a factual determination not in the record, see Harris, 39 Va. App. at 676, 576 S.E.2d at 231, or involve an affirmative defense that must be "asserted in the pleadings," Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963), or serve as a subterfuge for a constitutionally prohibited cross-appeal in a criminal case, Hart v. Commonwealth, 221 Va. 283, 290, 269 S.E.2d 806, 811 (1980) – all inapplicable to this case.

The trial court is authorized to conduct divorce proceedings. "[J]urisdiction in divorce suits is purely statutory, conferred in clear, detailed language." Sprouse v. Griffin, 250 Va. 46, 50, 458 S.E.2d 770, 772 (1995) (citing Lapidus v. Lapidus, 226 Va. 575, 578, 311 S.E.2d 786, 788 (1984); Steinberg v. Steinberg, 11 Va. App. 323, 328-29, 398 S.E.2d 507, 510 (1990)). Code § 20-96 provides that "The circuit court, on the chancery side, shall have jurisdiction of suits for annulling or affirming marriage and for divorces."

However, "[a] divorce suit abates when one party dies while the suit is pending and before a decree on the merits; this is because the death terminates the marriage, thus rendering the divorce suit moot as it relates to the parties' marital status." Sprouse, 250 Va. at 50, 458 S.E.2d at 772 (citing Simpson v. Simpson, 162 Va. 621, 633, 175 S.E. 320, 325 (1934), cert. denied, 295 U.S. 735 (1935)). *Actio personalis moritur cum persona* -- a personal action dies with the person. See Grubb's Adm'r v. Sult., 73 Va. (32 Gratt.) 203 (1879). Therefore, the divorce proceedings abated upon husband's death, divesting the court of jurisdiction over the cause.

### 3. The Trial Court Erred in Ruling on the Contempt Disposition and Awarding Wife $77,437

During the course of the proceedings, the court twice found husband in contempt for failing to obey the court's orders on support and discovery, but deferred ruling on the disposition of those findings. On June 20, 2002, husband's counsel informed the court that husband had died, and moved the court to disburse the funds under control of the conservator to the estate because the cause had abated. Wife argued that the contempt orders were still in effect and that in cases of civil contempt for the violation of an injunction, the court could impose punishment in the form of a fine or imprisonment, or afford the injured party remedial relief for the violations. She requested the court to order remedial damages in the amount of fifty percent of the amount of the funds husband had transferred out of the marital assets.

The court denied husband's counsel's motion and continued the case until September 2002. The court held another hearing on husband's motion to transfer the funds to the estate and took under advisement the issue of to what extent husband could still be held in contempt, in spite of the fact that he was dead. Shortly thereafter, the court issued an opinion letter ordering the conservator to pay wife $77,437 to purge husband of contempt for violating the court's *pendente lite* order not to transfer funds out of the marital estate.

The court's authority to enter *pendente lite* orders in divorce suits is statutory. Code § 20-103 allows a court to make orders pending suit for divorce, including "to preserve the estate of either spouse, so that it be forthcoming to meet any decree which may be made in the suit." Code § 20-103(A)(vii). Code § 20-71 also provides:

> At any time before the trial, upon motion of the complainant, with notice to the defendant, the court may enter such temporary order as seems just, providing for the support of the neglected spouse or children, or both, pendente lite, and may punish for violation of the order as for contempt.

Jurisdiction to enter *pendente lite* orders rests on the pending divorce suit. Death of the payor spouse, which abates the divorce action, also renders the *pendente lite* order void. Decrees for spousal support or maintenance terminate upon the death of either party. Code § 20-109(D); see also Code § 20-107.1(A). In this case, the *pendente lite* orders, which husband was found to have violated, became void upon the abatement of the divorce proceedings due to his death.

The question then becomes whether the court erred in entering a disposition for contempt of those orders once the orders were void and husband was dead. Code § 20-71 allows the court to punish violation of a *pendente lite* order as contempt.

"Proceedings for contempt of court are of two classes -- those prosecuted to preserve the power and to vindicate the dignity of the court, and those instituted to preserve and enforce the rights of private parties. The former are criminal and punitive in their nature; the latter are civil

- 13 -

and remedial." Drake v. Nat'l Bank of Commerce, 168 Va. 230, 239, 190 S.E. 302, 306 (1937) (citing In re Nevitt (C.C.A.) 117 F. 448 (1902); Gompers, 221 U.S. 418; Terminal R.R. Ass'n of St. Louis v. U.S., 266 U.S. 17 (1924)). This second class of contempt includes compensatory civil contempt sanctions, which, as the name suggests, compensate the plaintiff for losses sustained because of the defendant's non-compliance or disobedience of a court's order. Bagwell v. United Mine Workers, 244 Va. 463, 475, 423 S.E.2d 349, 356 (1992), rev'd on other grounds, 512 U.S. 821 (1994); Powell v. Ward, 15 Va. App. 553, 558, 425 S.E.2d 539, 543 (1993). In the case at bar, the court's contempt order falls within this second class.

The court ordered the conservator to pay wife $77,437 out of husband's funds "in order to purge the plaintiff of contempt." "Compensatory actions are essentially backward looking, seeking to compensate the claimant through the payment of money for damages caused by past acts of disobedience." United Mine Workers v. Clinchfield Coal Co., 12 Va. App. 123, 129, 402 S.E.2d 899, 902 (1991).

> In appropriate cases, the violator may be punished by forcing him to restore the *status quo* as it existed before the violation, or by adjudicating against him as if that *status quo* had not been interrupted or by an award of damages against him in favor of the injured party sufficient to indemnify [her] for the pecuniary loss occasioned to [her] as a result of the act or omission which violated the injunction having injured or damaged property or rights which [she] was entitled to have protected or preserved by the injunction.

Deeds, 162 Va. at 262, 174 S.E. at 79. See also French v. Town of Clintwood, 203 Va. 562, 569, 125 S.E.2d 798, 802 (1962) (citing Deeds, 162 Va. at 261, 174 S.E. at 79); Rainey, 14 Va. App. at 971, 421 S.E.2d at 212 (citing Leisge v. Leisge, 224 Va. 303, 308, 296 S.E.2d 538, 540-41 (1982)). The court was attempting to compensate wife for husband's removal of assets out of the marital estate in violation of the court's *pendente lite* orders.

"[A] civil contempt proceeding is between the original parties to [the] litigation and is instituted and tried as part of the main cause." Powell, 15 Va. App. at 560, 425 S.E.2d at 543

(citations omitted).  It is a proceeding ancillary to and in support of the divorce suit and its decrees.  Eddens v. Eddens, 188 Va. 511, 521-22, 50 S.E.2d 397, 402 (1948); Lindsey v. Lindsey, 158 Va. 647, 652, 164 S.E. 551, 553 (1932).  When, as in this case, the jurisdiction to enter a decree in the main cause ends, no jurisdiction survives as to matters purely ancillary to that object.[3]  That is because "[a] civil contempt may be prosecuted in the cause out of which it arose and not as a separate proceeding . . . ."  Local 333B, United Marine Div., 193 Va. at 781, 71 S.E.2d at 164.  See also Carbon Fuel Co. v. United Mine Workers., 517 F.2d 1348, 1349 (4th Cir. 1975) (holding "a civil contempt proceeding is in effect a continuation of the main action and therefore a party to a suit may not review upon appeal an order fining or imprisoning him for civil contempt except in connection with appeal from a final judgment in the main action" (citation omitted)).  "A judgment, decree or order entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void."  Robertson v. Commonwealth, 181 Va. 520, 536, 25 S.E.2d 352, 358 (1943) (citations omitted); see Mardula v. Mendelson, 34 Va. App. 120, 125, 538 S.E.2d 338, 341 (2000) (citing Robertson, 181 Va. at 536, 25 S.E.2d at 358).

Moreover, contempt is a personal action.  Contempt "is directed at the *person* of the recalcitrant."  Edwin B. Meade, Lile's Equity Pleading and Practice § 301 (3d ed. 1952) (emphasis in original).  "'It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.'"  Hayes v. Hayes, 3 Va. App. 499, 505, 351 S.E.2d 590, 593 (1986) (quoting Vanderbilt v. Vanderbilt,

---

[3] The case at bar is distinguished from the case of Sprouse, 250 Va. 46, 458 S.E.2d 770, in which the Supreme Court held that the court retained jurisdiction of funds held in an escrow account until further order of the court.  In this case, the court did not create a *res* over which it retained *in rem* jurisdiction after husband's death.  As discussed below, the funds in control of the conservator belonged to the estate upon husband's death, and should have been transferred to the estate's administrator at that time.

- 15 -

354 U.S. 416, 418 (1957)). "No order can be made directly binding on a person unless he is properly in court, neither can his rights or interests in the property, if any, be foreclosed." Mardula, 34 Va. App. at 126 n.3, 538 S.E.2d at 341 n.3 (citation omitted). A contempt fine may not be imposed unless the defendant is present in court or has been served with a rule to show cause why the fine should not be imposed. Higginbotham v. Commonwealth, 206 Va. 291, 295, 142 S.E.2d 746, 749 (1965).

> [N]o court or judge shall impose a fine upon . . . [a] person for disobedience of its process of any contempt, unless he either be present in the court at the time or shall have been served with a rule . . . requiring him to show cause why the fine should not be imposed and shall have failed to appear and show cause.

Code § 19.2-11. See also Pettibone v. United States, 148 U.S. 197, 207 (1893). Although the court entered a show cause order against husband while he was still alive, that order, and the order following the show cause hearing on the contempt matter, did not contemplate that any fine would be imposed against husband. The order awarding wife the $77,437 was not entered until after husband was dead. Once husband was dead, he, obviously, could not be present in court, nor could he be served a rule to show cause why the fine should not be imposed. See Code § 19.2-11.

In addition, a civil contempt sanction is not appropriate where a defendant has no ability to purge himself. Husband, personally, had no ability to purge himself of the contempt fine. Punishment may not be imposed in a civil contempt proceeding when it is established that the contemnor is unable to comply with the terms of the order. "Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." United States v. Rylander, 460 U.S. 752, 757 (1983).

Furthermore, although the court may have been attempting to compensate wife for any loss occasioned to her as a result of husband's violations, there is no evidence in the record that

- 16 -

wife was injured in such an amount, or that the court even determined that she was entitled to relief. "[T]he court may only impose a compensatory fine 'measured in some degree by the pecuniary injury caused by the act of disobedience.'" United Mine Workers v. Covenant Coal Corp., 12 Va. App. 135, 146, 402 S.E.2d 906, 912 (1991) (quoting Gompers, 221 U.S. at 444). See also Leisge, 224 Va. at 308, 296 S.E.2d at 541. Such a remedial fine should be based on evidence of complainant's actual loss. See Carbon Fuel Co., 517 F.2d at 1350. Although husband was ordered not to transfer any marital funds, his doing so did not ineluctably lead to the conclusion that wife was entitled to one-half of the monies he transferred. The court cannot attempt to fashion an equitable distribution award in a cause that has abated due to husband's death because it no longer has jurisdiction over the parties' property.[4] There was no proof that wife had been damaged by the violation and, therefore, she was not entitled to have such remedial punishment imposed upon husband. See Deeds, 162 Va. at 263, 174 S.E. at 79. Although the court had in its power the authority to punish husband for his contempt, husband's death has the effect of forever denying wife the right to have the court make findings on any pecuniary loss she may have sustained due to husband's acts of disobedience during the pending divorce suit.

The court did not have jurisdiction to dispose of the contempt holding once the divorce suit abated, therefore the order directing the conservator to pay wife $77,437 out of husband's

---

[4] See footnote 3 distinguishing this case from Sprouse, 250 Va. 46, 458 S.E.2d 770, in which the court had created a fund over which it retained jurisdiction.

estate "in order to purge the plaintiff of contempt" is void. Accordingly, we hold that the court

erred in ruling on the contempt disposition and awarding wife $77,437.[5]

### 4. The Trial Court Abused Its Discretion in Awarding the Conservator's Fee Against Husband

The court appointed the conservator pursuant to its contempt power, authorized by Rule

4:12, because of husband's continuing violation of the court's orders. Rule 4:12 requires the

party failing to obey "to pay the reasonable expenses, including attorney's fees, caused by the

order, unless the court finds that the failure was substantially justified or that other circumstances

make an award of expenses unjust." Rule 4:12(b)(2). An award of actual costs and damages for

civil contempt enforcement includes all reasonable expenses incurred in enforcing the civil

contempt.[6]

The conservator rendered services on behalf of husband and was properly paid from

husband's estate pursuant to Code §§ 64.1-171 to -173. However, none of the expenses incurred

by the conservator after husband's death can be imposed on his estate, because the purpose for

the conservator was extinguished upon the death of the husband. Because the court appointed

the conservator to prevent husband from further violating the court's orders, and those orders

---

[5] Other jurisdictions have also held that trial courts do not have jurisdiction to dispose of contempt findings if based on the violation of *pendente lite* orders that become void upon abatement of divorce proceedings due to a party's death. See Socha v. Socha, 515 N.W.2d 337, 338-39, 339 n.2 (Wis. Ct. App. 1994) (holding that the court loses jurisdiction to punish violations of temporary orders in a divorce action once a party to that action dies and that "[i]t is elementary that a court must have personal jurisdiction and subject matter jurisdiction to enter an order of contempt against a party"); see also Computer Teaching Corp. v. Courseware Applications Inc., 547 N.E.2d 718, 720 (Ill. Ct. App. 1989) ("A judgment of contempt cannot be sustained on review where the underlying order is void because the court lacked subject-matter or personal jurisdiction."); Pettygrove v. Pettygrove, 393 N.W.2d 116, 119 (Wis. 1986) (noting that, at common law, "when one party to a divorce proceeding dies during the pendency of the action, the cause of action abates and the court loses jurisdiction").

[6] In addition to Rule 4:12, Code § 20-99(5) also provides a court authority to award costs, "as equity and justice may require."

became void upon husband's death, future compliance was not required. In other words, once husband died, the need for the conservator was obviated, and his role ceased. See e.g., Major v. Orthopedic Equip. Co., 496 F.Supp. 604, 614 (E.D. Va. 1980) (holding that the purpose of the contempt had been obviated, therefore the court could not determine that any other goal would be served by holding the party in contempt).

Upon husband's death, husband's son, Thomas P. Hackler, Sr., became executor of husband's estate. Upon notification that husband had died, it was incumbent upon the court to abate the action, transfer the funds in the possession of the conservator to husband's personal representative in accordance with Code § 64.1-57.1, and determine the reasonable amount of the conservator's fee for which husband was responsible. When a decedent dies, title to his real estate vests immediately in his heirs at law, subject to divestment by a valid will. Broaddus v. Broaddus, 144 Va. 727, 742, 130 S.E. 794, 798-99 (1925) (citing Elys v. Wynne, 63 Va. (22 Gratt.) 224 (1872); Mills v. Mills, 69 Va. (28 Gratt.) 442 (1877)). Because the estate was not a party to the proceeding and was not in contempt, there was no reason for the conservator to continue in its role, or for the fees incurred after husband's death to be charged against the estate.

We remand this issue to the trial court with instructions to ascertain the reasonable amount of the conservator's fee that was accrued at the time of husband's death on June 3, 2002. See Francis v. Francis, 72 Va. (31 Gratt.) 283, 290 (1879). The conservator may then submit that amount, as a judgment that arose from a lawful court order, as a claim against husband's estate. See Code §§ 64.1-171 to -173.

## C. Attorney's Fees on Appeal

Both parties request that this Court award costs and attorney's fees incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon a review of the record, we find the litigation addressed appropriate and substantial issues and that

neither party generated unnecessary delay or expense in pursuit of its interests.  Therefore, the requests are denied.

### III.  Conclusion

In conclusion, we hold that the January 31, 2003 order was not a final, appealable order. Our jurisdiction to hear the appeal is proper because husband's estate filed a notice of appeal within thirty days of the June 18, 2003 order.  We affirm the trial court's appointment of the conservator pursuant to Rule 4:12.  Because the divorce action abated upon the death of husband, every proceeding ancillary to it also abated, divesting the trial court of jurisdiction to make further determinations in the case.  Husband's estate is responsible for the amount of the conservator's fee accrued until husband's death.  Accordingly, we affirm in part, reverse in part, and remand to the trial court to determine the reasonable fees of the conservator accrued to the date of husband's death.

Affirmed in part,<br>
reversed in part,<br>
and remanded.

Annunziata, J., concurring, in part, and dissenting, in part.

I join the principal opinion with respect to Parts II.A., II.B.2., II.B.3., and II.C. With respect to Part II.B.1, I concur in the judgment to affirm on the ground that Code § 20-103(A)(vii) provided the trial court the authority to appoint a conservator in this case. With respect to Part II.B.4, I concur in the judgment to hold husband's estate responsible for the conservator's fees accrued up to the time of husband's death. However, I would hold that the trial court's authority to award the conservator's fees emanates from Code § 20-99(5), not Rule 4:12, and join the dissent with respect to its reasoning and conclusion that Rule 4:12, and the contempt power arising from the Rule, do not authorize the appointment of a conservator. I have not found any federal or state case or statute which authorizes the appointment of a conservator as a sanction for the violation of a court's order to answer discovery requests related to the party's estate and financial affairs.

Clements, J., concurring, in part, and dissenting, in part.

I concur with the principal opinion except as to the issues involving the appointment and payment of the conservator. For the reasons that follow, I would hold that the trial court erred in appointing the conservator and ordering husband to pay any of the conservator's fees. Hence, I respectfully dissent from the majority's affirmance of the trial court's appointment of the conservator and the majority's decision that husband's estate is responsible for payment of that portion of the conservator's fee that accrued prior to husband's death.

In upholding the trial court's appointment of the conservator in this case, the majority concludes the trial court acted properly under Code § 20-103(A)(vii) to prevent husband's dissipation of marital assets.[7] I disagree with the majority's decision for a number of reasons.

First, I believe the majority's reliance on Code § 20-103(A)(vii) to resolve this matter is unsupported by the record in this case and contrary to established principles of appellate review.

On October 15, 2001, wife filed a "Motion and Notice" informing husband that wife would appear in court on November 15, 2001, solely

> to move the Court for the following relief:
>
> 1. To request that the Court provide any and all relief contained under Rule 4:12 for Mr. Hackler's continued failure to abide by this Court's previous Order regarding discovery.
>
> 2. To hold Mr. Hackler in contempt of Court for his continued failure to abide by this Court's support Orders, including health insurance matters.
>
> 3. To request attorney's fees and costs in the amount of $1500.00 for this unnecessary appearance.

---

[7] Code § 20-103(A)(vii) provides, in pertinent part:

> In suits for divorce . . . the court having jurisdiction of the matter may, at any time pending a suit pursuant to this chapter, in the discretion of such court, make any order that may be proper . . . to preserve the estate of either spouse, so that it be forthcoming to meet any decree which may be made in the suit . . . .

After the November 15, 2001 hearing, the trial court entered an order on January 16,

2002, stating as follows:

> On November 15, 2001, the plaintiff [wife] appeared in person and
> by counsel. The defendant did not appear, but his counsel was
> present on his behalf.
>
> After hearing the evidence and argument on the numerous issues
> before the Court, the Court rules, as follows:
>
> > 1. A show cause is to be issued against the defendant.
> >
> > 2. Within twenty-one (21) days of November 15, 2001, the
> > defendant is to answer all interrogatories and supplemental
> > interrogatories under oath, and he is to fully and completely
> > answer Interrogatory No. 5 under oath within twenty-one (21)
> > days.
> >
> > 3. Any and all relief requested under Rule 4:12 of the
> > Rules of the Supreme court of Virginia will be continued to the
> > show cause hearing date, as will the issue of attorney's fees and
> > costs requested by the plaintiff.

That same day, the trial court also entered a show cause order stating as follows:

> On November 15, 2001, the plaintiff [wife] appeared in person and
> by counsel. The defendant was not present, but his counsel was
> present on his behalf.
>
> After hearing a brief amount of evidence regarding what
> appears to be a continued violation of this Court's previous Court
> Orders, it is herein ORDERED that the defendant [husband] is to
> personally appear in the Circuit Court of Chesterfield County on
> the 28th day of January, 2002, at 9:00 o'clock a.m. to show cause,
> if any, why he should not be fined, imprisoned, and why he should
> not pay attorney's fees to counsel for the plaintiff for what appears
> to be the defendant's continued violations of this Court's previous
> Orders regarding spousal support, health bills of the plaintiff not
> covered by insurance, dissipation of marital assets, and the
> defendant's continued failure to answer the discovery previously
> propounded by the plaintiff in this case, which discovery the
> defendant has been ORDERED previously by this Court to answer.
> *Additionally, the defendant shall show cause, if any, why this
> Court should not entertain any and all appropriate motions under
> Rule 4:12 of the Rules of the Supreme Court of Virginia, including,
> but not limited to, appointing a conservator or guardian to manage*

*the marital assets in control of the defendant until a Final Decree can be entered in this case.*

The Clerk is directed to prepare the necessary papers for a private process server to serve a copy of this show Cause Order on the defendant at his address . . . .

(Emphasis added.) It is clear from this order that, for purposes of the show cause notice given to

husband, the appointment of a conservator was tied strictly to Rule 4:12, in accordance with

wife's motion for relief under that Rule.

Following the January 28, 2002 show cause hearing, the trial court entered an "Order" on

March 5, 2002, stating as follows:

On January 28, 2002, Janice Hackler appeared in person and by counsel. Lewis R. Hackler, although personally served, did not appear. Richmond A. Wollstein, Esq., appeared as attorney for Mr. Hackler. *The purpose of the hearing was the "Show Cause Order" filed against Mr. Hackler.*

After hearing the evidence and argument of counsel, it herein ORDERED, as follows:

1. Mr. Hackler is in contempt of this Court's previous Orders. The disposition of this contempt is deferred until March 27, 2002, at 10:15 a.m. . . .

2. This Court finds that Mr. Hackler is in arrears in the amount of $2,000.00 through January, 2002, regarding his spousal support obligation. This amount is to be paid directly to Mrs. Hackler no later than February, 2002. Mr. Hackler is under a continuing spousal support obligation of $2,000.00 per month. Judgment is rendered in favor of Janice W. Hackler against Lewis R. Hackler in the amount of $2,000.00, plus interest at nine percent, from January 28, 2002.

3. The Court finds that Mr. Hackler is in arrears $169.60 regarding his obligation to Mrs. Hackler concerning uncovered medical and drug expenses. He is to pay this amount directly to her no later than the end of February, 2002. Judgment is rendered on behalf of Janice W. Hackler against Lewis R. Hackler in the amount of $169.60, plus interest at nine percent, from January 28, 2002.

4. Mr. Hackler is ORDERED to pay to Denis C. Englisby, Esq., . . . $750.00 in attorney's fees regarding the work that had to be

- 24 -

performed and the appearance made on January 28, 2002. This amount is to be paid no later than the end of February, 2002. This amount carries a nine percent interest rate per year from January 28, 2002, until paid in full. Additional attorney's fees may be awarded on the March 27, 2002 Court date.

5. This Court appoints Richard C. Ferris, II, Esq., as Conservator of the funds and accounts being held by Mr. Hackler at this time. A separate Order will be entered outlining Mr. Ferris' duties.

(Emphasis added.)

That same date, the trial court also entered an "Order Appointing Conservator," which outlines the conservator's duties and explains the appointment as follows:

In accord with this Court's ruling *resulting from the hearing of January 28, 2002,* it is herein ORDERED that Richard C. Ferris, II, Esq., is hereby appointed to act as Conservator for all funds, accounts, royalties presently in the control of Mr. Hackler or in the hands of others on his behalf, including, but not limited to, any expectancies of funds that come to him or may come to him each month or periodically.

(Emphasis added.)

Although, neither of the trial court's orders of March 5, 2002, expressly state that the conservator was appointed pursuant to Rule 4:12,[8] both orders indicate that they arose from the January 28, 2002 hearing, the sole express purpose of which was to deal with the issues addressed in the court's January 16, 2002 "'Show Cause Order' filed against [husband]." As previously noted, in identifying the sanctions and remedial measures the court may impose in accordance with wife's motion for relief, the show cause order specifically refers to the appointment of a conservator pursuant to Rule 4:12. Conversely, neither the show cause order nor the court's March 5, 2002 orders makes any reference to Code § 20-103. Nor did wife ever move the trial court for relief under that statute.

---

[8] Indeed, neither order expressly provides any statutory or rule-related basis for the appointment of the conservator.

- 25 -

Likewise, the trial court's "Order" of March 5, 2002, draws no connection between the appointment of the conservator and the court's apparent finding that husband was in contempt of court for the dissipation of marital assets. In the show cause order, the court specifically ordered husband to show cause "why he should not be fined, imprisoned, and [ordered to] pay [wife's] attorney's fees . . . for what appears to be the defendant's continued violations of this Court's previous Orders regarding . . . dissipation of marital assets" and separately ordered husband to show cause why the court should not appoint a conservator pursuant to wife's request for relief under Rule 4:12, a rule regarding discovery. In the March 5, 2002 "Order," the trial court made a general finding that husband was in contempt of court, but expressly deferred the disposition of that finding until a later date. In other words, the trial court's appointment of the conservator was not the disposition of the contempt finding for husband's dissipation of marital assets in violation of the court's previous orders. Rather, it was, in my view, a separate remedial measure imposed by the trial court pursuant to Rule 4:12.

Thus, I believe that, regardless of its apparent effect, the trial court's appointment of the conservator was made pursuant to Rule 4:12. This view is buttressed by the fact that, regarding the appointment of the conservator, husband's estate contends on appeal, as below, solely that the trial court did not have the authority to appoint a conservator pursuant to Rule 4:12 and that, even if the court had such authority, the appointment of the conservator was not in compliance with the procedural requirements set forth in Code §§ 37.1-134.6 to 37.1-134.22 pertaining to the appointment of a conservator. In response, wife contends exclusively that the trial court had the authority to appoint a conservator, and properly did so, under Rule 4:12. Neither party suggests that the trial court based its appointment of the conservator upon any rule or statute other than Rule 4:12 or that any other rule or statute authorized the trial court to do so. Hence, the sole

- 26 -

issue presented on appeal regarding the appointment of the conservator is whether the trial court erred in appointing the conservator pursuant to Rule 4:12.

This Court has consistently held that we will not address an issue on appeal that was not raised before the trial court, see, e.g., Torian v. Torian, 38 Va. App. 167, 185-86, 562 S.E.2d 355, 365 (2002) (citing Rule 5A:18), and on appeal, see Mullins v. Commonwealth, 39 Va. App. 728, 733, 576 S.E.2d 770, 772 (2003) ("On appeal, we [will] consider only the issues raised."); Shoup v. Shoup, 37 Va. App. 240, 253 n.6, 556 S.E.2d 783, 790 n.6 (2001) (en banc); see also Richardson v. Moore, 217 Va. 422, 423 n.1, 229 S.E.2d 864, 865 n.1 (1976) (stating the Court would "express no opinion" on a particular question because that question "was not raised on appeal"). A significant purpose underlying these principles is to provide the parties the opportunity to consider and address the issues related to perceived errors before we resolve them on appeal. See, e.g., Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988) (requiring issues be raised prior to their resolution on appeal "to protect . . . from appeals based upon undisclosed grounds"). Here, the parties never had the opportunity, either below or on appeal, to consider and address the propriety of the application of Code § 20-103 in this case. Thus, I am of the opinion that, in proceeding, in its resolution of this matter, *sua sponte* beyond the scope of the specific issue presented to the trial court and to this Court on appeal, without the parties ever having had the opportunity to address the specific issue resolved by the majority, the majority exceeds our appellate authority.

Moreover, in determining that the trial court acted properly under Code § 20-103(A)(vii) to prevent husband's dissipation of marital assets, the majority effectively engages in a "right result, wrong reason" analysis. See Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992) ("An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason."). However, in doing so, the majority disregards

- 27 -

the well established principles that the "right result, wrong reason" rule "may not be used if the correct reason for affirming the trial court was not raised in any manner at trial" or if "further factual resolution is needed before the right reason may be assigned to support the trial court's decision." Id. Here, as previously stated, the majority's "right reason" for affirming the trial court's decision – Code § 20-103(A)(vii) – was never presented to the trial court in any manner. Likewise, further factual resolution is statutorily required before it may be properly concluded that the trial court correctly appointed a "conservator," see Code §§ 37.1-134.6 to 37.1-134.22, or, perhaps more accurately here, a "receiver," see Code §§ 8.01-582 to 8.01-606, under Code § 20-103(A)(vii). For example, pursuant to Code § 37.1-134.13, a trial court or jury must consider several specific factors and "determine[] on the basis of clear and convincing evidence that the respondent is incapacitated and in need of a guardian or conservator" before a conservator may be appointed. Similarly, Code § 8.01-592 permits the appointment of a special receiver without notice to the defendant only if it is first determined that "an emergency exists and it is necessary that a receiver be appointed immediately to preserve the subject matter."[9] In such a case, a bond is required, see Code § 8.01-592, and the appointment "is limited to a period not longer than thirty days" unless the appointment is extended following a *de novo* hearing on the matter, Code § 8.01-593. I find nothing in the record that indicates that such requisite

---

[9] Assuming, without deciding, that, based on the record's lack of any evidence suggesting husband was incapacitated, the appointment of the "conservator" in this case was actually an appointment of a "receiver," I conclude that such appointment was necessarily made pursuant to Code § 8.01-592, because (1) the attorney appointed was clearly a "special receiver," rather than a "general receiver of the court," see Code §§ 8.01-582 to 8.01-590 (describing the duties and responsibilities of general receivers); John L. Costello, Virginia Remedies § 9-2, at 258 (2d ed. 1999) ("Whereas the general receiver is the permanent fiscal agent of the court, the special receiver is appointed ad hoc and (usually) for the short period before trial."), and (2) the only notice given to husband regarding the appointment of a fiduciary in this case referred solely to the appointment of a "conservator or guardian" pursuant to "Rule 4:12," which does not, in my opinion, qualify as "reasonable notice" of an application for "the appointment of a receiver" under Code § 8.01-591 or a "pray[er] for the appointment of a receiver" under Code § 8.01-594.

- 28 -

determinations, as appropriate, were ever made. I conclude, therefore, that the majority's use of a "right result, wrong reason" analysis to resolve this matter is inappropriate.

Furthermore, even assuming, *arguendo*, (1) that the issue of Code § 20-103(A)(vii)'s application is properly before us in this case, (2) that Code § 20-103(A)(vii) grants the trial court the discretion to appoint a special receiver to preserve a spouse's estate, (3) that the trial court intended to appoint a special receiver in this case pursuant to Code § 20-103(A)(vii) to prevent husband's dissipation of marital assets during the pendency of the divorce action, and (4) that the appointment of the special receiver was properly procured in accordance with the notice and other requirements of Code §§ 8.01-591 to 8.01-599, I would still conclude that the trial court abused its discretion because, in my view, Code § 20-103(A)(vii) does not authorize the appointment of a receiver upon the facts and circumstances of this case.

"The appointment of a special receiver is . . . an extraordinary effort by the court to preserve the assets at issue until trial or execution can be had." John L. Costello, <u>Virginia Remedies</u> § 9.2, at 258 (2d ed. 1999). Additionally, it is "an intrusive remedy which should be resorted to only in extreme cases." <u>Id.</u> § 9.5(c), at 262; <u>see also</u> <u>Mintzer v. Arthur L. Wright & Co.</u>, 263 F.2d 823, 824 (3d Cir. 1959) (observing that the "appointment of a receiver is an equitable remedy of rather drastic nature"). Indeed, the appointment of a receiver "is an exercise of the extraordinary power of the court, based upon equitable considerations. It is often harsh and oppressive in its effects, wresting the property from the owner without a hearing and before a decree, and inflicting irreparable mischief." <u>Williamson's Adm'r v. Washington City, Virginia Midland & Great S. R.R. Co.</u>, 74 Va. (33 Gratt.) 624, 635 (1881). Hence, because it is "a very intrusive remedy," a receivership should be used only where "necessary to prevent irreparable harm and no other adequate remedy exists." Brett R. Turner, <u>Equitable Distribution of Property</u>

3.05, at 63 (2d ed. 1994) (citing <u>Mayhue v. Mayhue</u>, 485 A.2d 494, 497 (Pa. Super. Ct. 1984) (noting that a receivership is "a harsh measure" that should only "be exercised as a remedy of last resort")).

Here, the trial court ordered the appointed fiduciary to "take receipt" of "all funds, accounts, royalties presently in control of [husband] or in the hands of others on his behalf, including, but not limited to, any expectancies of funds that come to him or may come to him each month or periodically" and to "distribute no more than $4,000.00 per month to [husband] from these funds." The trial court, however, made no finding that the appointment of a receiver was necessary to prevent irreparable harm to wife's likely share of the marital estate, and I am unable to reach that conclusion upon the record before me. Indeed, although the record contains no precise determination of the extent of husband's dissipation of marital funds prior to the appointment of the fiduciary on March 5, 2002, it appears that husband's failure to comply with the trial court's December 9, 1999 order enjoining the parties from "transferring, selling, disposing, concealing or otherwise making unavailable the marital property and other property acquired during the marriage of the parties, until further Order of the Court," resulted in a loss of funds of, at most, approximately $13,000, from an account that held more than $140,000 following that dissipation. No other evidence of dissipation appears in the record.

Therefore, I am of the opinion that other, less drastic adequate remedies were available to prevent further dissipation of marital assets by husband and to compensate the marital estate for those assets already dissipated. Indeed, the trial court had not exhausted the compensatory and coercive civil contempt sanctions at its disposal. Among other possible remedies, the trial court might have ordered reimbursement of the dissipated funds to the marital estate to restore the status quo or, upon distribution of the marital assets, simply compensated wife for her losses resulting from husband's noncompliance by accounting for the dissipation of marital assets in the

property distribution award and further awarding wife any costs she incurred for experts needed to trace and calculate the dissipated assets. To protect against and prevent further dissipation of the marital estate, the trial court also might have ordered that a bond be given to cover wife's likely share of the marital estate, transferred control of some or all of the marital assets to wife, or ordered prospective fines and incarceration that would be imposed in the event husband continued to dissipate marital assets.

Thus, because there was no showing that the appointment of a receiver was necessary to prevent irreparable harm to wife and other adequate remedies existed, I would hold that the appointment of a receiver was unwarranted in this case and, thus, improper. Consequently, I disagree with the majority's conclusion that, in appointing the conservator, the trial court acted properly under Code § 20-103(A)(vii) to prevent husband's dissipation of marital assets.

Turning to the actual issue presented on appeal, I would also hold that Rule 4:12 does not authorize the appointment of a conservator as a sanction for a party's failure to comply with a court's order compelling discovery.

> Rule 4:12(b) governs discovery abuses and provides for sanctions against a party who fails to comply with a court's order to provide or permit discovery. A trial court generally exercises "broad discretion" in determining the appropriate sanction for failure to comply with an order relating to discovery. Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990). Consequently, we accord deference to the decision of the trial court in this case and will reverse that decision only if the court abused its discretion . . . . See First Charter Land Corp. v. Middle Atl. Dredging, Inc., 218 Va. 304, 308-09, 237 S.E.2d 145, 148 (1977). However, an appellate court should not simply rubber stamp every discretionary decision of a trial court. To the contrary, we have an obligation to review the record and, upon doing so, to reverse the judgment of the trial court if we find a clear abuse of discretion.

Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000). Rule 4:12(b)(2) provides, in pertinent part, that, "[i]f a party . . . fails to obey an order to provide . . . discovery, . . . the court

. . . may make such orders *in regard to the failure as are just*." (Emphasis added.) Thus, although Rule 4:12(b)(2) grants the trial court broad discretion, it does not give the trial court unfettered discretion to impose any remedy or sanction for a party's failure to comply with the court's order compelling discovery. See id. at 176, 530 S.E.2d at 907 (holding that the trial court abused its discretion under Rule 4:12(b)(2) because the sanction it imposed was unjust).

Here, apparently based on husband's failure to comply with its orders compelling discovery, the trial court appointed a conservator under Rule 4:12 to "take receipt of" and manage the marital assets in husband's control. I perceive no logical connection in this case, or any other of which I can conceive, between the appointment of a conservator to "take receipt of" and manage the marital assets and a party's failure to comply with a court's order compelling discovery. The one thing has nothing to do with the other. I conclude, therefore, that, because the appointment of a conservator is not "in regard to" a party's failure to obey an order to provide discovery, the appointment of a conservator pursuant to Rule 4:12 is necessarily unjust and, thus, "involves the exercise of unfettered discretion." Gloucester County Dep't of Soc. Servs. v. Kennedy, 256 Va. 400, 405, 507 S.E.2d 81, 83 (1998) (Koontz, J., dissenting). I am unaware of any legal authority that persuades me otherwise.

Moreover, even assuming, *arguendo*, that Rule 4:12 authorizes the appointment of a conservator, I would still hold that the trial court abused its discretion in appointing the conservator in this case because other, less drastic adequate remedies and sanctions were available to the trial court under Rule 4:12 to enforce the court's discovery orders and to remedy husband's failure to respond timely to discovery. Hence, I respectfully dissent from that portion of the principal opinion that holds the appointment of the conservator was proper under Rule 4:12.

Having concluded that the trial court's appointment of the conservator constituted error, I further conclude that requiring husband to be responsible for any of the conservator's fees is unwarranted.  Accordingly, I would hold that the trial court abused its discretion in ordering husband to pay any of the conservator's fees.

For these reasons, I would reverse the trial court's appointment of the conservator and its award of the conservator's fees against husband.