# CIRCUIT COURT OF AUGUSTA COUNTY

Stacey A. Hatter

v.

Geoffry S. Hatter

May 5, 2014

Case No. CL13001942-00

BY JUDGE VICTOR V. LUDWIG

The issue which was presented to the Court on March 17, 2014, was framed as one involving the preservation of marital assets, specifically Mad Hat Team & Apparel, L.L.C. (the LLC or the business) (and its assets) which is owned equally by the parties. The gist of the case is that Scott has taken actions to exclude Stacey from the premises and denied her access to other aspects of the business, and Stacey wants to be a part of the business because she has a right to be, although she acknowledged that she cannot operate it without Scott. Scott resists her returning to the business in any capacity, to the extent that he (and he suggested much of the staff) would cease participation in its operation if Stacey returns to the premises or otherwise is involved in managing or working for the business. Not permitting Stacey to return denies her a right she clearly has; permitting her to return very likely eviscerates any chance of the business succeeding (or continuing to function). Hers might be a satisfying but almost certainly would be a Pyrrhic victory.

At the beginning of the hearing, Mr. Cormier questioned the authority of the Court to enter an order of the flavor which Stacey sought. Essentially, based on the generally accepted practice (in this area and I suspect in others) and without any careful consideration or research of the issue, I decided that preservation of the business as an asset of the marital estate was contemplated by the statute. Indeed, as a more global observation, I assumed that preservation of marital assets was the purpose of the statutory authority. On more careful reflection, I am less certain that that conclusion is correct, although I acknowledge it is the view generally held.

"In suits for divorce . . . the Court . . . may . . . at any time pending a suit pursuant to this chapter, make any order that may be proper . . . to

preserve the estate of either spouse, so that it be forthcoming to meet any decree which may be made in the suit. . . ." Va. Code Ann. § 20-103(A)(vii). The section is frequently (indeed, as I noted, generally and commonly) invoked as authority for the Court to enter an order to preserve "the marital estate" pending a determination of equitable distribution; however, that is not what the statute says. The language of the statute does not address the marital estate, marital property, or property jointly held in any form; rather, it is focused on the estate "of either spouse." Given the clear distinction in Va. Code § 20-107.3 regarding marital and separate property, even going so far as to recognize that property can be hybrid, the General Assembly must have intended that the categories mean something, so its use of the term "the estate of either spouse" must have some meaning. Indeed, the appellate courts have referred to the "marital estate" as the whole to be divided in equitable distribution and to a party's individually held property as the party's "separate estate." See, e.g., Gilman v. Gilman, 32 Va. App. 104 (2000).

Moreover, the preservation of the targeted category of assets is not to ensure that neither party wastes, dilutes, or conceals marital property; rather, the court's authorization is for the specific purpose of ensuring that the spouse's estate will be available "to meet any decree which may be made in the suit. . . ." Before the legislature inserted the gender-neutral noun "spouse," the statute was even clearer that it was not referring to jointly held property or property that would be defined as marital. Until an amendment in 1982 (1982 Acts of Assembly, chapter 306), the statute provided that the Court could enter the order "to preserve *the estate of the man or woman*, so that it be forthcoming to meet any decree which may be made in the suit, or *to compel him or her* to give security to abide such decree." (Emphases added.) In other parts of the statute which appear more clearly to address matters that would generally affect equitable distribution, the language is not so restrictive. The Court may order "that a party pay . . . debts incurred jointly. . . ." *id.* at (i)(b), and it may grant "exclusive use and possession of the family residence," *id.* at (vi) (with no limitation as to how it is owned).

In researching the case law applying or construing the statutory language, I find only one published case and one unpublished one that apply the statute with some insight to what the language means; others cite it, but not for the purpose of construing the language. *See, e.g., Carper v. Carper*, 228 Va. 185 (1984), in which the wife conceded that a *pendente lite* order requiring the payment of mortgage payments could have been an order "to preserve the estate of either spouse" during the pendency of the marriage, *id.* at 187, and the Court assumed, without deciding, that the payment of the mortgage "after final divorce, constituted an order for support," *id.* at 188. Other than to suit the arguments which the wife had made, there was no explanation of why the characterization would have changed as a result of the entry of the divorce decree. *See also Taylor v. Taylor*, 5 Va. App. 436

(1988), in which the Court of Appeals, by its direction to the chancellor on remand, makes it reasonably clear that payment of mortgage installments could be characterized either as preservation of the estate, as a provision for use or possession (though how it could be that is not clear), or as spousal and child support.

In *Estate of Hackler v. Hackler*, 44 Va. App. 51 (2004), the trial court entered an order requiring that the husband pay *pendente lite* support to the wife and enjoining the parties "from selling, disposing, or concealing marital property until further order of the court. . . ." *Id.* at 56. After the husband repeatedly violated the order by not paying support, the trial court found him in contempt, *inter alia*, for failure to pay support and for dissipation of marital assets. To remedy the husband's disregard for the order, the court appointed a conservator to take control of the assets under the husband's control (it did not specify the categorization of the assets) and to pay his obligations from them.

Shortly thereafter, the husband died, and the husband's estate (the Estate) moved to transfer the assets to it because the divorce action abated with the husband's death. The wife argued that the trial court could still rule on the contempt issue and asked that she be awarded 50% of the funds which the husband had transferred (presumably the assets as to which he had been found in contempt for dissipating). The trial court ordered that the conservator pay the wife a substantial sum to purge the husband's contempt, and, although the decision does not specifically so state, it necessarily implies that the court ordered that the conservator transfer the balance to the Estate.

On appeal, the Estate raised four issues, none of which addressed the order of the trial court insofar as it enjoined the sale, disposition, or concealment of marital assets. The question that came nearest to raising that issue was the question of whether the trial court erred in appointing a conservator to take control over the assets in the husband's control. The Court of Appeals noted that the trial court had held the husband in contempt, *inter alia*, for violating the court's order prohibiting him from "selling or otherwise transferring marital assets," *id.* at 62, and possibly negotiating a check from the IRS and withdrawing funds from "the financial accounts," *id.* at 63. In addition, the husband failed to appear at a show cause hearing of which he had notice that the court might implement a remedy of appointing a conservator "to manage the marital assets in the control of the husband."

The issue which the Court of Appeals decided was the scope of the remedial options available to the trial court pursuant to Rule 4:12, and it concluded that the appointment of a conservator, under the circumstances presented, was within that scope. Buttressing that remedial authority, the Court also noted that "the trial court has authority pursuant to Va. Code § 20-103(A)(vii) to enter any order that may be proper during the pendency of a divorce suit in order to preserve the estate." Going further, the Court noted, in sweeping language:

> The clear intent of the General Assembly in enacting Code
> § 20-103(A)(vii) was to empower the trial courts to prevent
> dissipation of *marital assets* during a pending suit, in order to
> assure that the funds are available to comply with the court's
> final equitable distribution ruling.

*Id.* at 66 (emphasis added). Having said that, the Court candidly acknowledged that the "wife did not cite Code § 20-103(A)(vii) in support of the trial court's appointment of the conservator" but noted that "the appellate court is not required to ignore a correct legal basis in support of the court's judgment." To be sure, that is a correct statement of law regarding view of the Court of Appeals on the issue before it, *i.e.*, the authority of the trial court to appoint a conservator to implement the statute. However, the observation hardly justifies the Court's apparent *sua sponte* construction of the meaning of the statute (as opposed to the method of its implementation), so the Court's conclusion as to the purpose of the statute (to prevent dissipation of marital assets, as opposed to the "estate of either spouse") must be taken as *dictum*. It was not an issue argued to the Court; it was not, therefore, one fully and fairly developed, and the Court's conclusion in that regard was not necessary to the disposition of the case before it.

The case closest to construing the scope of the language of the statute is *Wolters v. Wolters*, 2003 Va. App. LEXIS 585 (2003). In that case, the trial court entered an order "freezing the parties' assets pursuant to Va. Code § 20-103(A)(viii). . . ." *Id.* at 6. Although it was not specifically stated in the opinion, it appears that the trial court froze all of the assets, presumably marital and separate assets alike. My analysis of the case is predicated on that premise.

> Under Code § 20-103(A)(vii), the trial court has discretion to
> issue an order to preserve the estate of either spouse pending
> suit. The record reflects that the trial court was concerned
> with husband's dissipation of assets before trial. Husband
> withdrew $47,000 and $10,000 from a single account after
> his retirement. He purchased a pickup truck and paid $11,000
> in dental fees for a child not of the marriage who lived with
> him in Washington. For these reasons, the trial court's order to
> preserve the parties' assets pending trial was justified.

*Id.* at 7. The case gives no information as to how the account was held, either jointly or in the husband's individual name. The impact of the holding is suspect, however, on at least three levels. First, the case is unpublished, so it is of no precedential value. Second, the Court was specific to note that it was not certain even that it had jurisdiction to address the issue because of an ambiguity in whether or not the question had been properly

preserved. Third, in something of an exhibition of cognitive dissonance, the Court initially recognized that the defendant had put to it the issue of the trial court's having ordered "that the *parties'* assets be frozen during the pendency of their divorce," *id.* at 1, then referred to the trial court's statutory authority to "preserve the *estate of either spouse* pending suit," *id.* at 7, and finally approved the trial court's order to preserve "*the parties'* assets pending trial," *id.* (Emphases added.) The latter infirmity is likely the result that the issue before the Court was not the authority of the trial court to act as it did, but the propriety of the trial court's decision in response to the husband's argument that the freeze "would prevent the enjoined parties from paying living expenses and fails to clearly state the 'precise duties' of the parties." *Id.* at 6. As the Court characterized it, the appellant had argued that "the freeze order is unenforceable because it would prevent the enjoined parties from paying living expenses, and fails to clearly state the 'precise duties' of the parties." *Id.* at 6. That attack was not directed to the power of the trial court to enter an order but to the scope, effect, and clarity of the order. Hence, the issue concerning me is not the issue that the Court purported to address.

The evidence was clear that the LLC in this case is a marital asset, and, given that, it is equally clear that Stacey has a right of access to it, to its books, to the premises from which it is operated (assuming them to be owned by or leased to the LLC), and to a share of the income from it. The evidence was also clear, however, because Stacey admitted it to be the case, that her contribution to the business was narrowly focused and that she does not have the knowledge, experience, or expertise to operate the business. The evidence was equally clear that, if Stacey returns to the business, Scott will leave it to her. The evidence was clear that both parties have drawn on business accounts for their personal expenses, but, happily for me, I was not asked to perform an accounting or to reconcile who has drawn or spent more. (That is an issue, I am sure, which will be revisited in the larger equitable distribution proceeding, but one for which I expect the parties will need financial experts if they hope to sort it out because it is beyond the ken of the Court without expert evidence.)

Just as the Court cannot pay parties' mortgage payments, so the Court cannot manage the marital business. Although I fully recognize Stacey's right to full access to the LLC, I also fully recognize that there is a significant inequity in compelling Scott to operate the business under circumstances which he deems to be entirely unacceptable and unworkable. To the extent that Scott manages the business without Stacey's participation, of course, the Court will hold him responsible, in the ultimate equitable distribution allocation, for his application of marital assets and his use of marital profits (with due regard for his efforts and business acumen). Knowing the consequences of her doing so, to the extent that Stacey's reentry and

full participation in the business results in Scott's withdrawing from the business, she will bear equal responsibility for the results.

Although I now have reservations as to the scope of the Court's authority to deal with the dissipation of marital property, I have no inclination to opine on an issue not fully developed (and that is somewhat of a problem of my own making because I do not know what argument Mr. Cormier was going to make). Hence, I will not dispose of this case on the basis of the statute's not authorizing the Court to do more than what its language provides. Certainly without definitively concluding that the Court has the authority to do what is commonly done (*i.e.*, preserve marital assets as opposed to the assets of either spouse), I will enter an order "granting [Stacey] full access to and participation" in the LLC. That is not so much a notion of preserving marital assets; rather, it is merely a recognition that Scott has no right to bar her from the business.

These parties have a marital asset apparently worth preserving. I leave it to them to fashion a method of doing just that. I do put the parties on notice that it is unlikely that I will entertain an argument by Stacey that Scott is guilty of marital waste simply by giving her all that she demands and more, unless he takes some action affirmatively to injure the LLC as opposed simply to letting her run the business as she sees fit. Knowing that his position is that the business cannot succeed with her participation, if Stacey insists on her rights with the result that the LLC falters (knowing that to be a likely result), she will have to live with that decision. On the other hand, as I noted above, each party should take care how he or she uses the business' assets to pay personal expenses; that will create an accounting issue that will or should be reconciled in equitable distribution.