### Richmond

STEPHEN C. LEISGE

v.

MARILYN K. LEISGE

June 18, 1982.

Record No. 810024.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*B. VanDenburg Hall (Philip A. Wells,* on briefs), for appellant.
*Andrew Yankwitt [N.Y.]* for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal we review whether the trial court correctly decided the custody of a 4-year-old daughter as between competing claims of her parents. We affirm the action of the trial court in awarding custody to the mother.

In early 1976, Stephen Leisge, a Lieutenant Colonel in the United States Air Force stationed in Alabama, met Marilyn Kimberl. Both parties were divorced, and Stephen had a 14-year-old daughter by his prior marriage. Stephen and Marilyn began living together. When the Air Force transferred Stephen to the Pentagon in July, 1976, Marilyn moved to Virginia with him. In October, 1977, Stephen moved out of the apartment they shared. In January, 1978, Marilyn informed Stephen that she was pregnant, and they married on February 25, 1978. Until the child, Kimberly, was born on July 9, 1978, they resided together. Again, Stephen moved out, and the parties have not lived together since that time.

On July 6, 1979, Stephen filed a petition in the Juvenile and Domestic Relations District Court (juvenile court) in Arlington County, pursuant to Code § 16.1-241(A)(3), alleging that Marilyn's emotional problems had culminated in a third suicide attempt and hospitalization, that she was under psychiatric care, and that the father desired the child's custody. In her answer, Marilyn denied that she was suffering from any emotional problem and sought custody and child support. The juvenile court granted joint custody, but ordered that Marilyn have the child the majority of the time and that Stephen pay support. Stephen sought a trial *de novo* in the circuit court.

The circuit court heard the case on June 10 and 11, 1980. Stephen testified that during the first year of their separation Marilyn became emotionally unstable. She was under the delusion that she had been raped. She had attempted suicide three times and was

still receiving psychiatric treatment at the time of trial. Marilyn explained that she had loved Stephen desperately and consulted an analyst to resolve the problems of their separation. The medication caused the delusions. She explained that she never seriously attempted suicide; she was only trying to force Stephen to return.

By decree dated October 3, 1980, the court ordered that the custody and control of Kimberly be awarded to Marilyn, subject to Stephen's right to have the child with him for visitation for a total period of twelve weeks per year. The court also ordered that any subsequent written agreement between the parents concerning visitation be binding and ordered Stephen to pay child support in the amount of $250 per month.

On appeal, Stephen assigns the following errors: (1) the circuit court denied him and Kimberly due process of law when it refused to hear testimony from certain of Stephen's witnesses at the trial, at a subsequent visitation hearing, and at a hearing on Stephen's motion to reconsider; and (2) it disregarded the child's best interests by improperly granting Marilyn custody.

## I. *Limitation of Witnesses.*

■ Stephen contends that Code § 16.1-113[1] governs the circuit court proceedings and requires the court to hear all evidence produced irrespective of whether the court from which the appeal was taken heard it. However, Stephen has misapplied Code § 16.1-113, which falls within Chapter 6 of Title 16.1.

This appeal arose under the "Juvenile and Domestic Relations District Court Law." Code §§ 16.1-226, *et seq.* (Acts 1977, c. 559). Code § 16.1-296 provides in pertinent part:

From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken *in accordance with the provisions of Chapter 7 (§ 16.1-123 et seq.) of Title 16.1* . . . . Proceedings in the circuit court shall conform to the equity practice where evidence is heard *ore tenus;* . . . . [Emphasis added.]

---

[1] Code § 16.1-113 states in pertinent part that "[a]ll legal evidence produced by either party shall be heard, whether the same was produced or not before the court from which the appeal is taken."

> In all cases on appeal, the circuit court in the disposition of such cases shall have all the powers and authority granted by the chapter to the juvenile and domestic relations district court.

We look to Chapter 7, not 6, as Stephen has suggested. *Accord, Walker v. Dept. of Public Welfare,* 223 Va. 557, 290 S.E.2d 887 (1982). Code § 16.1-136 provides that "any appeal taken under the provisions of this chapter [7] shall be heard *de novo* in the appellate court and shall be tried without formal pleadings in writing . . . ."

The issue, then, is whether the court denied Stephen a full and adequate hearing on his appeal. At the conclusion of the first day of the June hearing, Marilyn's counsel called Dr. Palladino, Marilyn's treating psychiatrist. Counsel discovered that Palladino was unavailable and tendered a transcript of his prior testimony before the juvenile court. Stephen's counsel agreed to this on condition that he be able to call his experts, Dr. Riddle and Dr. Pepper, as rebuttal witnesses. The court replied that if any issues remained open after reading Palladino's transcript, then both experts could address them.

After reading Dr. Palladino's transcript, the court stated:

> I do not think that I need any further evidence in this case and am prepared to rule on it subject to your comments. I would like to give you an opportunity to argue it. If there are other witnesses that you have standing by that you consider would have some crucial testimony to offer, you may, in your arguments, give me a proffer on what they would say.
> If it turns out that that would be crucial to the determination of the case, I will hear them. But, I would assume, from your indications to me when the trial began, that they fall generally into categories of people who would respectively support the good qualities of each of these people as parents. Undoubtedly, co-workers and friends have been brought here for the purposes of saying that for whom they testify is a good parent. Or, perhaps, to testify to some specific episode of bad behavior on the other side, and I am quite prepared to believe that.

After a short recess to enable counsel to prepare final summations, each attorney addressed the court at great length as to the merits

of his client's cause. Stephen's attorney attacked the validity of Dr. Palladino's diagnosis, criticizing the procedures used by him and the inadequacy of his interviews. He described the specifics of the reports and evidence of Drs. Pepper and Riddle, and alleged the exact relevancy, in his opinion, of the potential testimony of the private investigators. The argument of Stephen's counsel covers 34 appendix pages, that of Marilyn's counsel 16 pages, and the rebuttal 10 pages. At the conclusion of the summations the court congratulated counsel for the thorough preparation and presentation of their respective cases. The court did not attempt to foreclose any legitimate inquiry, but tried to avoid cumulative testimony, and, as conceded by Stephen's counsel in oral argument before this court, it had the power to do so. If either advocate felt that essential testimonial evidence was not before the court or in the record, then counsel should have communicated that fact to the court before the arguments began or, at the very latest, before the court made its oral decision from the bench. It was imperative that each advocate apprise the court of any vital evidence that might have been omitted and not speculate upon the outcome of the case.

## II. *Custody Award.*

Stephen cites error in the circuit court's findings that Marilyn is a fit parent, that all other things are equal in this case, and that the child's best interest lies in a custodial award to her mother.

As we recently restated in *Durrette* v. *Durrette,* 223 Va. 328, 288 S.E.2d 432 (1982), the controlling consideration in child custody awards is the child's welfare. *See Mullen* v. *Mullen,* 188 Va. 259, 49 S.E.2d 349 (1948). When a child is of "tender years," the court performs a two-fold analysis. First, it determines whether both parents are fit. If only one is fit, the court awards the child to that parent. If both are fit, the court moves to the second step in its analysis. It considers whether all other things are equal. *McCreery* v. *McCreery,* 218 Va. 352, 237 S.E.2d 167 (1977). Among other things, it considers the environment and circumstances surrounding each proposed home. *Id.* If the court finds the home environments equal, then an inference arises that the mother should care for the young child. *Harper* v. *Harper,* 217 Va. 477, 299 S.E.2d 875 (1976). *Accord, McCreery, supra.*

The court found that Stephen was an excellent parent. The real issue was whether the bizarre behavior of Marilyn from the

time of the first separation in October, 1977, to her hospitalizations in July, 1979, was sufficient in the eyes of the court to make her an unfit parent. The record revealed an overwhelming mass of conflicting expert testimony. After considering the transcripts from the juvenile court, and listening to testimony from each parent, the court concluded that Marilyn's overreaction, although bizarre and irrational, would not reoccur. "There seems to be no evidence that she has reacted that way to other stressful situations in her life. Just Colonel Leisge," the trial judge stated. In a factually similar case, *White* v. *White,* 215 Va. 765, 213 S.E.2d 766 (1975), we upheld the trial court's finding that the father was a fit parent. Mr. White, like Marilyn, distraught at his spouse's desertion, attempted suicide and voluntarily underwent psychiatric care. Mrs. White asserted that his emotional instability made him an unfit parent. The trial court found him fit despite his "bizarre behavior." 215 Va. at 766, 213 S.E.2d at 767. Because a trial judge's factual determinations of conflicting evidence have the weight of a jury verdict, this court will uphold them unless plainly wrong or without evidence to support them. *Carpenter* v. *Carpenter,* 220 Va. 299, 302-03, 257 S.E.2d 845, 848 (1979). *Accord, Durrette, supra.*

The court then considered the other circumstances surrounding the custody: the child's age and sex, and the social worker's statement that Kimberly was "flourishing" in her mother's care. We hold that the court properly considered these factors in its determination. In *Mullen,* 188 Va. at 270, 49 S.E.2d at 354, we included these as considerations when a court is balancing the merits and qualifications of one parent's custodial care against another. The trial court had a perfect right to draw from the evidence the conclusion that all things were equal and that Marilyn's custody benefitted the child. We therefore affirm the court's action in that regard.

*Affirmed.*