COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, Alston and Senior Judge Felton
Argued by teleconference

STEVEN PARASIDIS, INDIVIDUALLY AND AS
 TRUSTEE FOR PARASIDIS FAMILY TRUST NO. 1,
 PARASIDIS FAMILY TRUST NO. 2,
 STEVE PARASIDIS REVOCABLE TRUST,
 PARASIDIS FAMILY I, L.L.C.,                    MEMORANDUM OPINION* BY
 PARASIDIS FAMILY II, L.L.C. AND                JUDGE ROSSIE D. ALSTON, JR.
 PARASIDIS FAMILY III, L.L.C.                   DECEMBER 8, 2015

v.      Record No. 0714-15-4

MARGARET KARAGEORGE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

Joseph Peter Drennan for appellants.

Lawrence J. McClaffery (R. Peyton Mahaffey; Laura Golden Liff;
McCandlish & Lillard, P.C., on brief), for appellee.


Steve Parasidis, individually, and as Trustee of Parasidis Family Trust I, Parasidis Family

Trust 2, and as Co-Trustee of the Steve Parasidis Revocable Trust, Parasidis Family I, L.L.C.,

Parasidis Family II, L.L.C., and Parasidis Family III, L.L.C. (collectively, appellant or

appellants) appeals the trial court's finding that he was in civil contempt of court for submitting

fraudulent documents during the pendency of this litigation and lying at a deposition. On appeal,

appellant presents six assignments of error, which can be summarized as follows: (1) That the

trial court erred in considering appellant's previous contempt finding when determining whether

he was in contempt in the present proceeding, (2) that the trial court erred in failing to consider

mitigating factors and in taking evidence of alleged misconduct by appellant at a bankruptcy

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

court deposition, and (3) that the trial court erred in its monetary and equitable sanctions against appellant as a result of finding him in contempt. We find that appellant failed to properly preserve two of his assignments of error, and we find no error in the trial court's rulings. Therefore, we affirm.

## I. Background[1]

### A. The Litigation History

The parties have a lengthy and tortured history of litigation, which began in 2008 when appellant's wife, Penelope ("Penny") Parasidis and her brother, Paul Karageorge, filed a petition for appointment of a guardian and conservator for their mother, Margaret Karageorge (Mrs. Karageorge or appellee) (the "first litigation"). The first litigation was settled upon execution of a written settlement agreement and release requiring Mrs. Karageorge to pay more than $9.5 million combined to Paul, Penny, and their children, which included a total of $1.6 million net to be paid to Penny. In exchange, Mrs. Karageorge was to receive a dismissal of the first litigation with prejudice and a comprehensive release of claims (the "release"), which included any allegations related to Mrs. Karageorge's estate, litigation, capacity, any property matters, and any future claims any party may have relating to or arising directly or indirectly from or concerning any of those matters.

Despite the release, Penny and her three children filed a complaint against Mrs. Karageorge in December 2009 related to the very matters released at the conclusion of the first litigation (the "second litigation"). In response, Mrs. Karageorge filed a counterclaim seeking rescission of the settlement agreement since she did not receive the benefit of the

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

bargain.  Though Penny nonsuited her claims in the second litigation, the case went to trial on Mrs. Karageorge's counterclaim and on August 17, 2011, the trial court granted Mrs. Karageorge's request and entered a judgment order rescinding the settlement agreement and requiring Penny and appellant to disgorge all payments received from Mrs. Karageorge under the settlement agreement (the "judgment").[2]  The judgment for Mrs. Karageorge totaled $1.6 million.

## B.  The Fraudulent Documents

Several fraudulently executed documents lie at the heart of the present litigation and are the basis for which the trial court found appellant in contempt in this case.  Purportedly in January 2010, Penny transferred $1.25 million of the $1.6 million paid to her by Mrs. Karageorge under the settlement agreement to Parasidis Family Trust No. 2, of which appellant and Penny are trustees and appellant's three sisters are beneficiaries.  Penny and appellant then took out a Leasehold Deed of Trust Bond, which obligated the Parasidis Family Trust No. 2 to return the $1.25 million to Penny and appellant, with interest, in monthly installments over ten years.  Penny and appellant later purported to endorse the leasehold deed of trust over to themselves as tenants by the entirety (the "leasehold deed").  Penny and Steve then purported to enter into assignment of interest agreements, as trustees and beneficiaries of the Parasidis Family Trusts 1 and 2, assigning all of their right, title, and interest in both trusts from themselves as "husband and wife" to "Steve Parasidis and Penelope K. Parasidis, as tenants by the entirety" (the "assignment of interest transfers") (collectively, the leasehold deed and assignment of interest transfers will be referred to as the "January 2010 documents").

---

[2] Penny appealed the trial court's ruling in the second litigation and the Supreme Court denied her petition for appeal.  See Parasidis v. Karageorge, Record No. 112032 (Va. Mar. 6, 2012).

From July 2011 through March 2012, Penny made transfers of assets from bank accounts titled in her name individually or jointly with appellant into new accounts titled to her and appellant as tenants by the entirety (the "bank transfers"). On September 17, 2012, over one year after the judgment was entered, Penny and appellant created the Steve Parasidis Revocable Trust and the Penelope K. Parasidis Revocable Trust and appointed themselves as co-trustees (together the "revocable trusts").

### C. The Fraudulent Conveyance Action against Appellants and Penny Parasidis's Bankruptcy Filing

On May 30, 2013, Mrs. Karageorge filed the present case against Penny and appellant, alleging that they created and controlled various entities to transfer and conceal assets in avoidance of the judgment. The complaint requested that the trial court void the fraudulent conveyances (the leasehold deed, assignment of interest transfers, and the bank account transfers) and award Mrs. Karageorge her $1.6 million plus attorney's fees.

In March 2014, Penny and Steve gave their depositions in the fraudulent conveyance action. In their depositions, they both testified that the January 2010 documents were in fact drafted in 2010 and effected the transfer of assets and interest to them as tenants by the entirety long before the judgment was entered in 2011. They did, however, admit that the bank transfers were done to avoid the judgment.

On April 10, 2014, the Parasidises' attorney, Phillip J. Harvey, sent a letter to Mrs. Karageorge's counsel, indicating that the January 2010 documents were actually created and executed sometime in 2012 and that appellant's and Penny's testimony at their March 2014 depositions was "inaccurate." As a result of Mr. Harvey's letter, Mrs. Karageorge filed an

amended complaint in the fraudulent conveyance action to include allegations that the January 2010 documents were fraudulent.[3]

On June 17, 2014, Penny filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Eastern District of Virginia. On June 18, 2014, an order staying the fraudulent conveyance action was entered by the trial court as a result of Penny's bankruptcy filing (the "stay order"). The stay order provided that the "status quo is maintained" and prohibited Mrs. Karageorge and appellant from obtaining possession of the property of Penny's estate and from exercising control over her property "i.e., the property that is the subject of this fraudulent conveyance action."[4]

Because the trial court proceedings were stayed, the parties conducted a Rule 2004 examination of Steve on September 10, 2014, in the context of Penny's bankruptcy proceedings.[5] During this deposition, Steve admitted that he agreed with Mr. Harvey's letter, that it was self-explanatory, and that his testimony at his March 2014 trial court deposition was "inaccurate" and "untruthful."

---

[3] This was an appropriate disclosure made by Mr. Harvey, after discovering appellant's fraudulent conduct, since Virginia Rules of Professional Conduct 3.3(a)(2) and (4) provide that a lawyer shall not knowingly fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act of a client, nor offer evidence that the lawyer knows to be false.

[4] Appellant and Penny filed a "Petition for Review of a Preliminary Injunction Pursuant to . . . Code § 8.01-626" purporting to appeal the stay order, arguing that it amounted to a permanent injunction. The Supreme Court issued an order on July 21, 2014, stating that it did not have jurisdiction over an appeal of the stay order because it "did not grant, refuse, dissolve or enlarge an injunction" but rather was "coextensive with the automatic stay imposed pursuant to federal statute and subject to the authority of the United States Bankruptcy Court to interpret that statute." See Parasidis v. Karageorge, Record No. 141035 (Va. July 21, 2014).

[5] See U.S.C.S Bankruptcy R. 2004 ("On motion of any party in interest, the court may order the examination of any entity.").

D.  The Contempt Motions

On September 24, 2014, Mrs. Karageorge filed a "Contempt Motion" against appellant and on October 10, 2014, the trial court entered an order finding that appellant "willfully violated" the stay order, and ordering the stay temporarily lifted as to the non-bankrupt defendants, and further ordering that "[o]n or before November 10, 2014, [appellant] . . . shall cause to be paid into the registry of this Court the sum of $20,796, which represented one-half of the subject Leasehold Deed of Trust Bond payments for the months of July, August, and September, and October 2014."  The trial court further ordered that "on or before the 10th of each subsequent month during the pendency of these proceedings, [appellant] shall pay into the registry of this Court the sum of $5,244, which represents one-half of the subject Leasehold Deed of Trust Bond payments."[6]

On October 24, 2014, Mrs. Karageorge filed a second contempt motion, requesting the trial court hold appellant in contempt for "giving perjured testimony in proceedings before [the trial court], and otherwise tampering with the administration of justice herein" (the "second contempt motion").  The second contempt motion alleged that Penny and appellant admitted to fabricating the January 2010 documents in 2012 to avoid the judgment and failed to disclose this fact until the April 10, 2014 letter from Mr. Harvey.  The motion noted that these revelations required Mrs. Karageorge to amend her complaint, continue the original trial date, reopen discovery, and re-depose Penny and appellant.  The motion also alleged that appellant lied at his Rule 2004 deposition and that once again, Mr. Harvey was the "bearer of bad news" when he revealed that appellant signed his sisters' names on the document purporting to assign a portion

---

[6] Appellant appealed the trial court's first contempt order.  That appeal was dismissed by order of this Court on March 25, 2015, due to appellant's failure to file an opening brief within the limits of Rule 5A:26.  See Parasidis v. Karageorge, Record No. 2093-14-4 (Va. Ct. App. Mar. 25, 2015).

of the beneficial interests of Trust No. 2 to appellant's sisters. Mrs. Karageorge requested that the trial court lift the stay order for the purposes of addressing the second contempt motion, hold appellant in contempt, award Mrs. Karageorge attorney's fees incurred in uncovering and addressing the contempt and in bringing and arguing the second contempt motion, and to strike any of appellants' defenses to the fraudulent conveyance action.

E. The Second Contempt Motion Hearing

On December 12, 2014, the trial court held a hearing on the second contempt motion and entered an order providing that "Steve Parasidis has been cited for contempt" and set the matter for a determination of appropriate sanctions or compensation to Mrs. Karageorge, if any. The trial court held a hearing on the second contempt motion on February 3, 2015. At the hearing, Mrs. Karageorge's counsel requested that the trial court award Mrs. Karageorge $187,000 in attorney's fees for prosecution of the fraudulent conveyance action for eleven months before being told that the January 2010 documents were fabricated to avoid the judgment. Mrs. Karageorge argued that she couldn't go forward to trial the next month because her pleadings had to be amended to include new allegations and that she essentially spent the previous year prosecuting a lie.

Appellant testified at the hearing and admitted that he backdated the January 2010 documents, that he testified falsely at his March 2014 deposition, and that he lied at his Rule 2004 deposition regarding his sisters' signatures. During closing argument, appellant's counsel stated the following:

> If it please the Court, Your Honor, there can be no gainsaying here that my client tendered altered or backdated documents in discovery. There can be no gainsaying that he testified falsely about them in his deposition in the spring of last year.
>
> And to the extent to which his conduct is sanctionable or worthy of civil contempt in respect to this case, that would be it.

- 7 -

. . . .

And the damages and the appropriate sanction to flow from that would -- should be attributable or traceable to those actions.

Appellant's counsel also objected to any consideration of actions taken by appellant prior to the filing of the fraudulent conveyance action or at the Rule 2004 deposition that occurred within the context of the bankruptcy case. The trial court noted that

TRIAL COURT: I believe the alleged contempt -- and you can correct me if I'm wrong, Counsel -- is submitting the fraudulent documents, the backdated documents, the false documents, to this court in this case as part of discovery and testifying about them falsely in a deposition in March of 2014 in this case. Is that right?

[MRS. KARAGEORGE'S COUNSEL]: That is correct, Your Honor.

TRIAL COURT: Okay.

[APPELLANT'S COUNSEL]: All right. And I actually agree with that. And the question then becomes the sanction.

Further, the following discussion took place between appellant's counsel and the trial court:

TRIAL COURT: Well, having admitted that he submitted false documents and backdated documents –

[APPELLANT'S COUNSEL]: He did.

TRIAL COURT: -- how can he be in a position now to oppose the relief that's requested in terms of the unlawful and fraudulent conveyance actions?

. . . .

[When] the stay is lifted and he files his answer what's he going to do? Is he going to deny that these things were false? He can't possibly.

[APPELLANT'S COUNSEL]: No, he can't. He can't do that. And so the remedy – the remedy of barring him from raising any defenses which would not transgress the automatic stay, I don't necessarily oppose that sort of relief.

At the conclusion of the hearing, the trial court found appellant in contempt and specifically noted the following in its ruling:

> I do think that perjury is punishable as contempt as long as added to it is the additional element of obstruction of the court in the performance of its duties.
>
> . . . .
>
> And let me be specific. It is not at all what happened at the 2004 - - Rule 2004 hearing in the bankruptcy court. I don't think that that's punishable as contempt by me.
>
> But it does help fashion the remedies, because even when [appellant] acknowledges his untruthful testimony under oath he continues to testify untruthfully under oath about something which he thinks is not material.
>
> . . . .
>
> But the fact that this went on for such a long time, that there were many, many, many documents submitted in discovery in this case which he acknowledges now were false, created out of whole cloth and backdated and his testimony under oath at his deposition in March of 2014 is punishable as civil contempt.

The trial court determined that the appropriate sanction was to compensate Mrs. Karageorge in the amount of $187,000 and bar appellant from raising any defenses to the fraudulent conveyance action. This appeal followed.

## II. Analysis

Appellant challenges the trial court's contempt finding and sanctions on several grounds. First, appellant argues that the trial court erred by taking into account the fact that he was previously found in contempt of court for continuing to take payments for the leasehold deed of trust after the entry of the stay order. Appellant further argues that the trial court erred in striking any defenses to the present fraudulent conveyance action and in failing to consider mitigating circumstances when determining whether appellant was in contempt and fashioning the remedies

for contempt. Appellant also takes issue with the allegedly excessive counsel fees awarded to Mrs. Karageorge as a result of the trial court's contempt finding and alleges that the trial court erred in considering actions taken by appellant prior to the filing of the present fraudulent conveyance action. Finally, appellant argues that the trial court erred in considering evidence that he lied under oath at his Rule 2004 bankruptcy deposition.

First, we find that appellant's second assignment of error challenging the trial court's decision to strike any defenses he may have raised to the fraudulent conveyance action is barred from consideration by Rule 5A:18. We also find that any argument appellant makes challenging the trial court's authority to find appellant in contempt of court is barred from consideration by Rule 5A:18.

Rule 5A:18 provides, in relevant part that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The purpose of the contemporaneous objection rule 'is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" Maxwell v. Commonwealth, 287 Va. 258, 264-65, 754 S.E.2d 516, 519 (2014) (quoting State Highway Comm'r v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974)).

Appellant spends the majority of his brief and argument on the trial court's alleged lack of authority to find him in contempt of court. However, at the contempt hearing, appellant not only failed to object to the trial court's authority to find him in contempt of court but went so far as to concede that a finding of contempt was appropriate and that the only remaining argument centered on appropriate sanctions. To this point, during closing arguments, the following discussion took place:

[APPELLANT'S COUNSEL]: Your Honor, there can be no gainsaying here that my client tendered altered or backdated documents in discovery. There can be no gainsaying that he testified falsely about them in his deposition in the spring of last year.

. . . .

And to the extent to which his conduct is sanctionable or worthy of civil contempt in respect to this case, that would be it.

. . . .

And the damages and the appropriate sanction to flow from that would -- should be attributable or traceable to those actions.

. . . .

TRIAL COURT: I believe the alleged contempt -- and you can correct me if I'm wrong, Counsel -- is submitting the fraudulent documents, the backdated documents, the false documents, to this court in this case as part of discovery and testifying about them falsely in a deposition in March of 2014 in this case. Is that right?

[MRS. KARAGEORGE'S COUNSEL]: That is correct, Your Honor.

TRIAL COURT: Okay.

[APPELLANT'S COUNSEL]: All right. And I actually agree with that. And the question then becomes the sanction.

Similarly, appellant failed to object to the trial court's decision to strike any defenses to the fraudulent conveyance action at the time that the trial court orally ruled. In fact, appellant actually conceded that such punishment was appropriate. These concessions are fatal to appellant's position on appeal. During the trial court's ruling, the following discussion took place between the trial court and appellant's attorney:

TRIAL COURT: Well, having admitted that he submitted false documents and backdated documents –

[APPELLANT'S COUNSEL]: He did.

- 11 -

> TRIAL COURT: -- how can he be in a position now to oppose the relief that's requested in terms of the unlawful and fraudulent conveyance actions?
>
> [APPELLANT'S COUNSEL]: Because he's not - he's not here for trial on the fraudulent conveyance action. He's here for trial on the - on this contempt matter. And -
>
> TRIAL COURT: Well, when he files his - when the stay is lifted and he files his answer what's he going to do? Is he going to deny that these things were false? He can't possibly.
>
> [APPELLANT'S COUNSEL]: No, he can't. He can't do that. And so the remedy – the remedy of barring him from raising any defenses which would not transgress the automatic stay, I don't necessarily oppose that sort of relief.

Because appellant not only failed to timely object to the trial court's authority to find him in contempt of court or object to the trial court's decision to strike any defenses to the fraudulent conveyance action, and in fact conceded that a finding of contempt and such punishment was appropriate, we find that consideration of any challenge to the trial court's authority to find appellant in contempt of court or to that portion of the trial court's punishment is barred by Rule 5A:18.

Next, we find no evidence in the record to support appellant's allegations with respect to his first, third, fifth, and sixth assignments of error. Specifically, we find no evidence from the record that the trial court considered the fact that appellant was previously found to be in contempt of court in 2014 in determining whether he should be held in contempt in the present matter. While the trial court received contextual argument and evidence through appellant's testimony at the hearing regarding his previous contemptuous conduct and punishment, there is absolutely no indication from the trial court's very specific ruling that it considered those actions when determining whether to find appellant in contempt of court on the present motion or in determining sanctions.

- 12 -

Further, we find no evidence in the record that the trial court failed to consider the alleged mitigating circumstances presented by appellant when determining whether to find him in contempt of court and if so, determining what punishments were appropriate. We similarly find no evidence in the record that the trial court improperly considered actions taken by appellants preceding the filing of the present fraudulent conveyance action or that it considered evidence from appellant's Rule 2004 bankruptcy deposition in its determination of this case.

To the contrary, the trial court was quite specific in its ruling and the basis for it. The trial court noted that "It is not at all what happened at the 2004 – Rule 2004 hearing in the bankruptcy court. I don't think that that's punishable as contempt by me." The trial court went on to recognize that appellant "acknowledge[d] his untruthful testimony under oath[,]" however, also found that despite that acknowledgement by way of Mr. Harvey's April 10, 2014 letter, appellant "continue[d] to testify untruthfully under oath." The trial court clearly stated that the "extent and duration for which this went on does . . . make this behavior rise to the level of contempt of court[,]" however it noted that the period of time it considered for purposes of the contempt was the period of time since the filing of the fraudulent conveyance action. The trial court did not state that it considered the forgery of the backdated documents in 2012 as the contemptuous behavior; rather, it was the "many, many documents submitted in discovery in this case which [appellant] acknowledges now were false, created out of whole cloth and backdated and his testimony under oath at his deposition in March of 2014 [that] is punishable as civil contempt."

From the record, it is clear that the trial court considered actions post-dating the filing of the fraudulent conveyance action and unrelated to the Rule 2004 deposition when determining whether appellant was in contempt of court. It also plainly considered the fact that appellant acknowledged that he lied under oath at his March 2014 deposition and corrected that

- 13 -

information in April 2014.  For these reasons, we see no support in the record for appellant's allegations that the trial court considered any evidence that it should not have in determining whether appellant was in contempt of court and fashioning the remedy for that contemptuous conduct.  Therefore, we affirm the trial court on appellant's first, third, fifth, and sixth assignments of error.

Appellant's remaining assignment of error challenges the allegedly excessive counsel fees awarded to Mrs. Karageorge as compensation and punishment for appellant's misconduct. A trial court's exercise of its civil contempt power is reviewed under an abuse of discretion standard, Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007), because the "use of contempt powers is clearly subject to the discretion of the trial court," Sapp v. Commonwealth, 263 Va. 415, 425, 559 S.E.2d 645, 650 (2002). "When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'"  Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) (quoting Hernandez-Guerrero v. Commonwealth, 46 Va. App. 366, 370, 617 S.E.2d 410, 412 (2005)).

Contempt may be either criminal or civil.  "[T]hose prosecuted to preserve and enforce the rights of private parties are civil, remedial, and coercive."  United Steelworkers of America, Local 8417 v. Newport News Shipbuilding & Dry Dock Co., 220 Va. 547, 549, 260 S.E.2d 222, 224 (1979) (citing Local 333 B, United Marine Div. v. Commonwealth, 193 Va. 773, 780, 71 S.E.2d 159, 163 (1952)). "'Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by

- 14 -

reason of noncompliance.'" Leisge v. Leisge, 224 Va. 303, 309, 296 S.E.2d 538, 541 (1982)

(quoting McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)).[7]

The trial court received evidence of Mrs. Karageorge's counsel fees for prosecuting the

fraudulent conveyance action up until appellants disclosed the fraudulence of various documents

and admitted that appellant lied at his March 2014 deposition. The trial court found these

compensatory sanctions reasonable and appropriate in light of the appellants' contemptuous

---

[7] The parties both discuss the circuit court case French v. Painter, 86 Va. Cir. 344, 2013 Va. Cir. LEXIS 111 (Martinsville, Mar. 27, 2013), because it involved factually similar circumstances in that the plaintiff filed a motion for sanctions pursuant to the inherent power of the court because the defendant perpetrated a fraud on the court by lying in discovery, violating federal and state healthcare privacy laws, and making improper contact with a material witness.
The trial court noted that the Supreme Court had not defined a "fraud on the court" and therefore adopted the definition promulgated by the federal courts that a "fraud on the court"

> occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.

Id. at 356-57, 2013 Va. Cir. LEXIS 111, at *23-24 (citing SunTrust Mortgage, Inc. v. AIG United Guaranty Corp., 2011 U.S. Dist. LEXIS 33118 (E.D. Va. 2011); Holmes v. Wal-Mart Stores East, L.P., 2011 U.S. Dist. LEXIS 46020 (E.D. Va. 2011)). Then, citing several circuit and local district court cases, the trial court went on to find that falsely testifying at a deposition and submitting a false interrogatory answer, even if unrelated to the matters in controversy, could support a finding of contempt and imposition of sanctions. After finding that the defendant "engaged in a pattern of deceptive and abusive conduct" the trial court granted the plaintiff's motion for sanctions, struck the defendant's answer to the complaint against him, and granted the plaintiff summary judgment on liability in the case. Id. at 361, 2013 Va. Cir. LEXIS 111, at *33-34.
Appellant argues that "the scope of wrongdoing in [French v. Painter] eclipsed the wrongful discovery conduct in which Appellants engaged in the trial court" and that in Painter, unlike the present case, the defendant never admitted to his misconduct, which should be considered a mitigating factor in this case. While Painter is not binding on this Court, we disagree with appellant that the conduct at issue in Painter was far more egregious than appellant's behavior in the present case. Painter, even if it was binding on this Court, would in fact support the trial court's finding of contempt and imposition of sanctions in this case.

behavior. The trial court's punishment was reasonable and supported by the evidence provided and therefore, we affirm the monetary sanctions against appellants.

<u>Affirmed</u>.