COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, O'Brien and Malveaux
Argued by videoconference


CLYDE CARLETON KOONS, IV, F/K/A
 CLYDE CARLETON CRANE, IV
                                                        OPINION BY
v.      Record No. 0580-20-4           JUDGE MARY GRACE O'BRIEN
                                                      FEBRUARY 2, 2021
LESLIE ELIZABETH CRANE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

A. Van McFadden (The McFadden Law Office, PLLC, on briefs), for
appellant.

David Horowitz (Law Office of David Horowitz, PLLC, on brief),
for appellee.


Clyde Carleton Koons ("husband") appeals an order finding him in contempt for failing to

comply with terms of a final decree of divorce. Husband's six assignments of error address service

of the rule to show cause, the willful nature of his violations, and the sanctions imposed by the

court.

BACKGROUND

A. Divorce and Property Settlement Agreement

Husband and Leslie Elizabeth Crane ("wife") were married in 2002 and divorced by final

decree entered in April 2016. The divorce decree incorporated the parties' property settlement and

support agreement ("PSA") and required husband to pay spousal support and certain insurance

premiums and unreimbursed medical expenses for wife. The divorce decree also required husband

to pay the mortgages on the parties' two condominiums, Unit #109 and Unit #302.

The PSA provided that the condominiums would be sold, and the aggregate net sale proceeds would be divided equally, after payment of any commissions, liens, and expenses resulting from the sales.  Paragraph 7(E) of the PSA also provided as follows:

> [I]n the event either party is delinquent in any payments provided for herein, same shall be charged against his share or her share of the net proceeds and paid to the other party.

Further, the PSA specified that husband would pay $5,000 of wife's attorney's fees "upon the sale of the first of the real properties to sell."

The divorce decree listed a street address in Woodland, Washington as husband's residential address and required that the parties "give each other and this court at least thirty days['] advance written notice of any change of address."  In a paragraph entitled "Knowledge of Residence," the PSA specifically required the parties to notify each other of a change in *residential address*:  "For so long as any obligation of this [PSA] remains unexecuted and either party still has obligations hereunder, each shall keep the other informed of his or her *address of residence*."  (Emphasis added).  The PSA also reserved the court's authority to award attorney's fees in connection with any future actions to modify or enforce the terms of the agreement.

## B.  Rule to Show Cause

In October 2018, wife requested a show cause rule based on husband's failure to comply with his financial obligations under the divorce decree.  Simultaneously, wife filed a motion to modify spousal support.  The court issued a show cause rule setting a hearing for November 16, 2018.  The court subsequently issued an amended show cause rule setting a hearing for January 30, 2019.

Husband did not appear at the January 30, 2019 hearing.  When the court inquired whether husband had been properly served, wife produced an affidavit of service showing that on December 18, 2018, the amended show cause rule, along with a letter from wife's counsel, the verified

petition, discovery requests, and the motion to modify spousal support, were served upon husband's "mother-in-law/co-resident" at the Washington address husband provided in the divorce decree.

Wife advised the court that husband never provided her with an updated residential address as required by the divorce decree, but he did send her the following email entitled "change of address" in July 2017:

My new address is:

Saudi Aramco
PO Box 8523
Dhahran 31311
Saudi Arabia

I hope this move will allow me to put my affairs in order.

Wife's counsel informed the court that he understood husband was "working in a compound [in Saudi Arabia] that's very exclusive. You can't get in there," but because husband had not provided wife with an updated residential address, wife "d[id]n't know for certain" if he was currently living in Saudi Arabia. Counsel also represented that Saudi Aramco's location in Houston, Texas is "fire walled" from its Saudi Arabia branch and "won't accept service, or do anything, or give out any information about the rest of Saudi Aramco."

Wife testified and confirmed that husband never advised her of a change in his residential address. Although in January 2017 husband emailed wife purporting to inform her of a residential address change in the United States, he merely provided a post office box in Washington. Wife responded, "A PO Box is not an address. . . . [Y]ou don't get to run away from your [c]ourt[-]ordered obligations."

Wife's counsel informed the court that in October 2018, he used a commercial delivery service to send the initial show cause rule and accompanying documents to the Saudi Arabian post office box provided in husband's July 2017 email. However, the package was returned several days

later without explanation. Also in October 2018, wife's counsel emailed the initial show cause rule and accompanying documents to husband at the address he had used in July 2017 and as recently as March 2018. When the court issued the amended show cause rule in November 2018, wife's counsel arranged for a private process server to serve it on husband at the Washington address he provided in the divorce decree.

The court found that substituted service on husband's mother-in-law at the Washington address was valid, noting that husband never informed wife or the court of any change in his residential address as required by the divorce decree. Additionally, the court acknowledged that wife sent the initial show cause rule and accompanying documents "by email to what appear[ed] to be a valid address" and unsuccessfully attempted to serve husband in Saudi Arabia.

Wife introduced evidence demonstrating husband's noncompliance with his financial obligations under the divorce decree. She testified that husband was an attorney with an estimated yearly salary of $250,000, yet he consistently ignored his financial obligations under the divorce decree to pay spousal support, insurance premiums, and unreimbursed medical expenses. She estimated that he owed her approximately $89,464 for those financial obligations alone.

Additionally, husband ignored his obligation to pay the condominium mortgages, resulting in foreclosure of the two properties. After deductions for various fees and costs, including a commission for the commissioner of sales, the net proceeds from the two foreclosure auctions totaled $6,067.55. Wife asserted that husband's nonpayment of the mortgages diminished the foreclosure proceeds, and she requested an opportunity to supplement the record with the precise amount. As a sanction, wife sought half the difference between the foreclosure sale price of each condominium and the price each condominium would have commanded if sold for its fair market value.

The court found husband in contempt and continued the matter to determine whether it had authority to order husband to pay wife half the difference between the foreclosure price and the fair market value of the condominiums at the time they were sold.

Wife filed a supplemental brief. Husband did not file a response. In an April 2019 order, the court ruled that it had authority to award wife half the difference between the foreclosure sale prices and the fair market values of the condominiums as a contempt sanction. The court continued the matter to hear additional evidence.

Prior to that hearing, counsel for husband filed a special appearance and moved to quash service of process and dismiss the show cause rule for lack of service. At the hearing, husband argued that the Washington residence might have been "the place [he] was last found" and "the last address that [he] submitted to the court," but it was not his "usual place of abode" as required by Code § 8.01-296(2)(a). Husband emphasized that he informed wife of his move to Saudi Arabia in July 2017, well before she attempted personal service on him at the Washington address in December 2018. Husband's evidence consisted of a *de bene esse* deposition transcript of his father-in-law, resident owner of the Washington address, who testified equivocally about husband's residence. Although his father-in-law testified that husband "moved out of our house when he got the job in Saudi [Arabia]," he further stated that husband's intent was to remain in Saudi Arabia only as long as he "could handle it" and husband had returned to the Washington residence in summer 2018 and winter 2017. Husband did not introduce any other evidence demonstrating that he abandoned the Washington abode or established a new residence elsewhere.

The court held that service of process on husband was valid and denied his motion to quash. Specifically, the court ruled that husband was properly served pursuant to Code § 8.01-296(2)(a), which provides for substituted service by delivering pleadings to a family member at a person's "usual place of abode." The court found that the process server delivered the show cause rule to

husband's mother-in-law in December 2018 at the Washington address listed in the divorce decree. The court further found that although husband emailed wife in July 2017 that he was working in Saudi Arabia and provided a post office box, he did not notify wife or the court of any change in his residential address as required by the divorce decree, and therefore the Washington address remained his usual place of abode.

## C.  Sanctions Hearing

In December 2019, the court conducted a hearing to determine sanctions for husband's contempt, which included determining the difference between the foreclosure sale price and fair-market value for each condominium. Although the court had found husband in contempt, it allowed him to present mitigation evidence.

Husband offered testimony from a real estate agent that in 2016, wife refused to remove excess personal property from Unit #109, leaving it unsuitable to show to prospective buyers. The agent further testified that wife would not provide keys for the unit or permit a lockbox and she insisted on an unrealistically high sale price. The agent stated that Unit #109 attracted no prospective buyers.

Another listing agent testified that wife also did not cooperate with efforts to show Unit #302 to prospective buyers; she would not meet with the agent or provide keys. The agent did not have access to Unit #302, and although a prospective buyer did make an offer, wife rejected it. Both agents testified that a realtor's commission would be approximately six percent of the sale price for each condominium.

Husband also introduced several emails among himself, wife, and the real estate agents to show wife's lack of cooperation. In a May 2016 email, husband told wife that she was "obstruct[ing]" sales by not posting pictures of Unit #109 and overpricing both units. He wrote, "I

do not think you have made a good-faith effort to sell the properties . . . I simply cannot continue to make these mortgage payments."

Wife testified that the excess personal property in Unit #109 belonged to husband. She stated that she requested twenty-four hours' notice to show Unit #109 rather than utilize a lockbox, and she explained that husband could have provided the agent with a key to Unit #302. She acknowledged setting high sales prices for both condominiums.

Ultimately, Unit #302 sold at foreclosure for $230,000 in October 2016, and Unit #109 sold at foreclosure for $243,000 in June 2017. Wife offered testimony from John Murphy, who qualified without objection as an expert in the field of real estate appraisal. Murphy testified as to the fair market value of the properties at the time of foreclosure. He explained that he performed a "retrospective appraisal" of both units and based his appraisal on their exteriors and on wife's descriptions of the interiors. He also relied on comparable sales from that same timeframe. Murphy opined that Unit #302 would have sold on the market for $265,000 and Unit #109 would have sold for $275,000.

Husband contended that wife was partially responsible for the foreclosures and, therefore, his liability should be reduced. However, the court rejected husband's argument that wife had "frustrated the [condominium sales]." It found husband's failure to make mortgage payments "began immediately [in] April 2016," and noted that even if wife had impeded or delayed the condominium sales, failing to pay the mortgages was not a self-help remedy available to husband. Further, the court accepted Murphy's expert testimony as to the fair market value of the condominiums on the dates of foreclosure but reduced the value by a "reasonable real estate broker commission" of six percent, as requested by husband. By reducing the fair market value by a hypothetical realtor's commission, the court mirrored the reduction of the actual foreclosure proceeds by the commissioner of sales' commission. The court also accepted wife's calculations of

the total amounts of unpaid mortgages to the extent that they reduced the net sales proceeds available to the parties.

The court also ruled that husband failed to comply with other financial obligations of the divorce decree and entered a final contempt order in March 2020. The court awarded wife her reasonable attorney's fees of $22,948.58 with respect to the contempt proceedings and an additional $22,948.58 in connection with her motion to modify spousal support.[1] The court denied husband's motions for rehearing and reconsideration, and this appeal followed.

## ANALYSIS

### A. Service of Process

Husband contends that he was not properly served with the show cause rule, and therefore the contempt order is void. He asserts that the Washington address listed in the divorce decree was not his "usual place of abode" as required for substituted service under Code § 8.01-296(2)(a). Additionally, husband argues that even if substituted service was valid, it was insufficient to confer personal jurisdiction, which is a requirement for him to be found in contempt.

Whether a court has acquired personal jurisdiction over a defendant presents a mixed question of law and fact. See Harrison v. Harrison, 58 Va. App. 90, 101-02 (2011). We defer to the circuit court's factual findings and view the facts in the light most favorable to wife, the prevailing party below, but we review *de novo* the court's application of the law to those facts. See Caplan v. Bogard, 264 Va. 219, 225 (2002). Further, we review issues of statutory construction *de novo*. See Bergaust v. Flaherty, 57 Va. App. 423, 429 (2011).

"A court acquires no jurisdiction over the person of a defendant until process is served in the manner provided by statute, and a judgment entered by a court which lacks jurisdiction over a

---

[1] Wife's motion to modify spousal support is not an issue before this Court.

defendant is void as against that defendant." Slaughter v. Commonwealth, 222 Va. 787, 791 (1981)

(citation omitted). Code § 8.01-274.1 provides the requirements for show cause petitions in the

circuit court as follows:

> Except as otherwise provided by law, any party requesting a rule to
> show cause for a violation of a court order in any civil action in a
> court of record shall file with the court a motion or petition,
> which . . . shall include facts identifying with particularity the
> violation of a specific court order and be sworn to or accompanied by
> an affidavit setting forth such facts. *A rule to show cause entered by
> the court shall be served on the person alleged to have violated the
> court order*, along with the accompanying motion or petition and any
> affidavit filed with such motion or petition.

(Emphasis added). Husband asserts that because the statute uses the words "served on the person,"

the amended show cause rule and accompanying affidavit must be hand-delivered to him.

However, the phrase "served on the person" refers to the multiple methods for obtaining *in

personam* ("personal") jurisdiction over a party, which include substituted service pursuant to Code

§ 8.01-296(2).[2] Code § 8.01-296 provides the requirements for service of process "upon natural

persons" as follows:

> 1. By delivering a copy thereof in writing to the party in person; *or*
>
> 2. By substituted service in the following manner:
>
>> a. If the party to be served is not found at his usual place
>> of abode, by delivering a copy of such process and
>> giving information of its purport to any person found
>> there, who is a member of his family, other than a
>> temporary sojourner or guest, and who is of the age
>> of [sixteen] or older; or

---

[2] Conversely, a method of service that *would not* satisfy Code § 8.01-274.1 is an order of publication, which confers only *in rem* jurisdiction. See Cranford v. Hubbard, 208 Va. 689, 690-91 (1968) (stating that service by publication confers upon a court only *in rem* jurisdiction). A court with *in rem* jurisdiction can dissolve a marriage even where one party does not appear, but it cannot adjudicate or enforce personal obligations. See Morris v. Morris, 4 Va. App. 539, 543-44 (1987) (holding that support provisions were unenforceable where a circuit court did not have *in personam* jurisdiction because the husband was served by order of publication).

> b. If such service cannot be effected under subdivision
> [(2)(a)], then by posting a copy of such process at the
> front door or at such other door as appears to be the
> main entrance of such place of abode[.]

Code § 8.01-296(1)-(2) (emphasis added). Either method of substituted service — on a family member or by posting — is valid service upon a "natural person[]" if it occurs at the party's "usual place of abode." Under Code § 8.01-296(2), substituted service at a party's usual place of abode may give a court jurisdiction over that person. See Washburn v. Angle Hardware Co., 144 Va. 508, 514 (1926) (recognizing validity of personal judgments against defendants served by substituted service).

Because husband is a nonresident, Virginia's long-arm statute applies and supports a conclusion that substituted service of the show cause rule was valid in this case. See generally Code § 8.01-328.1. The long-arm statute permits a Virginia court to exercise personal jurisdiction over certain nonresidents, such as husband, who have spousal support obligations in Virginia. See Code § 8.01-328.1(A)(8)(i)-(ii). These provisions of the long-arm statute do not require personal service on the nonresident. See id.[3] Therefore, substituted service in Washington was sufficient to give the Virginia court personal jurisdiction over husband and thus satisfy the requirement of Code § 8.01-274.1 that a show cause rule be "served on the person." See also Code § 8.01-107.3(K)(2) (providing a court with "continuing authority and jurisdiction" to "effectuate and enforce" equitable distribution determinations in divorce decrees, including authority to "punish as contempt of court").

Husband asserts that the Washington address provided in the divorce decree was not his "usual place of abode." He contends that it is, instead, his last home or last residence.

---

[3] By contrast, the long-arm statute does expressly require "proof of personal service" on a nonresident when jurisdiction arises from the person having "conceived or fathered a child in this Commonwealth." Code § 8.01-328.1(A), (A)(8)(iii).

A person's "usual place of abode" is distinct from his "last home" or "last known residence." See Washburn, 144 Va. at 515 ("Last home, or residence, or place of abode, are not synonymous with usual place of abode[.]"); cf. Code § 8.01-316(A)(1)(c) (requiring that an affidavit for an order of publication reflect a party's "last known residence"). Substituted service at a party's last home or residence is insufficient to show proper service at his "usual place of abode," particularly if the evidence demonstrates that he has abandoned that residence as his usual or permanent home. See Earle v. McVeigh, 91 U.S. 503, 508-09 (1875). However, temporary absence from his usual place of abode at the time of substituted service does not invalidate the effectiveness of that service. See Spiegelman v. Birch, 204 Va. 96, 97 (1963) (affirming validity of substituted service by posting at a defendant's Virginia home while he was away with his family in Florida for two months, because his absence was "only temporar[y]").

Here, the court found that the Washington address was husband's usual place of abode. The record supports this conclusion. Wife's evidence included a return of service indicating that the amended show cause order and sworn petition were served on husband's mother-in-law at the Washington address that husband provided in the divorce decree as his residential address of record. See Code § 8.01-326 (stating that the return of service by a private process server "shall be evidence of the facts stated therein"). The court found insufficient evidence that husband had permanently abandoned that usual place of abode. See Spiegelman, 204 Va. at 97. Husband never notified wife or the court of any change in his residential address as required by the divorce decree. Although he sent wife an email entitled "change of address" in July 2017, he merely provided a post office box for a company in Saudi Arabia and not a new residential address. Further, the court found that the deposition testimony from husband's father-in-law demonstrated that husband returned to the Washington residence on multiple occasions, as recently as summer 2018. Husband did not produce a driver's license or bank account with another address, and he did not testify that he

- 11 -

resided at a new address. The record therefore supports the court's factual finding that husband's presence in Saudi Arabia was temporary and that the Washington address remained his usual place of abode.

Husband nevertheless contends that, even assuming Washington was his usual place of abode, in-person service was required before the court could impose a civil contempt order. In support of this assertion, husband relies on Estate of Hackler v. Hackler, 44 Va. App. 51 (2004). However, his reliance is misplaced. In Hackler, this Court reversed the contempt finding because the husband had died, and the order required the estate conservator to use estate funds to purge the husband's contempt. Id. at 69, 71-72. We emphasized that "a civil contempt sanction is not appropriate where a defendant has no ability to purge himself," and we noted that the order imposing the contempt payments was entered after the husband's death. Id. at 72. "Once husband was dead, he, obviously, could not be present in court, nor could he be served a rule to show cause why the fine should not be imposed." Id.

Hackler does not address the situation here, where husband is alive but evaded personal service of the show cause order, requiring wife to resort to substituted service under Code § 8.01-296(2)(a). Hackler does not preclude a finding of contempt when a defendant has been properly served but is not physically present in court. The only limit that Hackler puts on the method of service is that the method be sufficient to confer personal jurisdiction: "[C]ontempt is a personal action[.] Contempt 'is directed at the *person* of the recalcitrant.' 'It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.'" Id. (first quoting Edwin B. Meade, Lile's Equity Pleading and Practice § 301 (3d ed. 1952), then quoting Hayes v. Hayes, 3 Va. App. 499, 505 (1986)). Because substituted service pursuant to Code § 8.01-296(2)(a) is sufficient to give a court personal jurisdiction over a party, where the evidence establishes service on a family member at the

party's usual place of abode, the court has authority to adjudicate that party's contempt and award sanctions.

Here, the court found that wife met her burden of showing proper substituted service on a family member at husband's usual place of abode. Further, the court noted that wife attempted to give husband notice of the hearing both by email[4] and by sending the show cause rule and accompanying documents to the post office box in Saudi Arabia. Finally, the court made a factual finding that husband did not provide persuasive evidence that he had abandoned residency at the Washington address and therefore his presence in Saudi Arabia was merely temporary. Because these determinations are supported by the record, and because Code § 8.01-274.1 does not preclude substituted service of a show cause order, we affirm the court's decision to dismiss husband's motion to quash.

### B. Willful Contempt

Husband does not contest that he failed to pay his court-ordered obligations but argues that he should not have been found in contempt because his violation of the divorce decree was not willful, but rather due to his financial inability to pay. He further contends that he violated the order because of wife's "unreasonable refusal to cooperate . . . with [his] efforts to sell the two condominiums."

"[T]o hold a litigant in contempt, the litigant must be 'acting in bad faith or [in] willful disobedience of [the court's] order.'" Zedan v. Westheim, 60 Va. App. 556, 574-75 (2012) (second and third alterations in original) (quoting Alexander v. Alexander, 12 Va. App. 691, 696 (1991)).

---

[4] Because we find that wife obtained valid substituted service on husband pursuant to Code § 8.01-296(2)(a), we decline to address husband's alternative argument on appeal that wife failed to demonstrate that she "cured" improper service of process under Code § 8.01-288 by emailing the initial show cause rule and accompanying documents to husband.

"On appellate review of this issue, we may reverse the ruling of the trial court only if we find that it abused its discretion." Barnhill v. Brooks, 15 Va. App. 696, 704 (1993).

In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court. See Frazier v. Commonwealth, 3 Va. App. 84, 87 (1986). Once the movant proves noncompliance, "the burden is on the obligor to provide justification for the failure to comply." Barnhill, 15 Va. App. at 704.

At the January 30, 2019 show cause hearing, wife established that husband failed to comply with financial obligations under the divorce decree, including the requirement that he pay the mortgage on their two condominiums, resulting in foreclosures. After the court denied his motion to quash, husband attempted to defend his nonpayment by arguing that he was suffering financially from wife's recalcitrance in selling the condominiums. However, the court made the factual finding that wife did not interfere with the marketing or sale of the condominiums, and husband presented no substantive evidence of his financial hardship. Additionally, the court held that husband was not entitled to engage in self-help through nonpayment. Because the record supports the court's findings that husband willfully violated numerous court-ordered obligations without justification, the court did not abuse its discretion in finding him in contempt.

## C. Sanctions

Husband's third, fourth, and fifth assignments of error concern the court's sanction for his failure to pay the condominium mortgages, as required by the divorce decree. Because husband did not comply with his financial obligations, the condominiums sold at foreclosure auctions for less than their fair market values. Pursuant to the parties' PSA, the court ordered that each party would receive half of the net proceeds from the foreclosure sales. Additionally, as a contempt sanction for husband's violation of the divorce decree, the court ordered that wife receive half of the difference between what the properties would have sold for at non-foreclosure sales (*i.e.*, fair market value)

- 14 -

and the actual foreclosure sale prices. In calculating the sanction amount, the court deducted the commissions actually earned by the commissioner of sales at foreclosure, as well as the commissions that would have been earned by a realtor in hypothetical sales on the open market.

Husband contends that the court erred by considering the difference between the foreclosure prices of the condominiums and their fair market values. He also argues that wife's evidence of the fair market values was speculative, and, finally, he asserts that the court erred by reducing the fair market values only by a hypothetical realtor's commission and not by the full costs and fees that would have accrued at an actual market sale. According to husband, the PSA limited the court's authority to equally divide the proceeds of $6,067.55 that remained after the condominiums were sold at foreclosure.

A court has broad discretion to fashion a sanction upon finding a party in contempt. "Upon a finding of contempt, a trial judge has discretionary power to enforce decrees of the court." Hackler, 44 Va. App. at 64; see also Code § 20-107.3(K)(2). "This includes the power, in the court's 'sound discretion,' to determine the 'degree of punishment.'" Epperly v. County of Montgomery, 46 Va. App. 546, 555 (2005) (quoting Hackler, 44 Va. App. at 64); see also Local 333B, United Marine Div. v. Commonwealth, 193 Va. 773, 786 (1952).

Paragraph 7(E) of the PSA states that "net proceeds" from the sale of the properties shall be paid in equal shares to the parties after the payment of any commissions and liens or other expenses of sale. It further provides that any delinquent payments made by a party "shall be charged against his or her share of the net proceeds and paid to the other party."

Husband argues that because this provision of the PSA expressly addressed sales proceeds and delinquent payments, the court's sanction inappropriately rewrote the parties' agreement. Husband relies on Smith v. Smith, 41 Va. App. 742 (2003), and Driscoll v. Hunter, 59 Va. App. 22 (2011), for the proposition that the PSA is a contract not subject to judicial modification. However,

those cases are inapposite. Smith held that the spousal support statute, Code § 20-109(C), limits a court's authority to "make or modify spousal support awards when an agreement exists" between the parties. 41 Va. App. at 751. Similarly, Driscoll held that the parties' property settlement agreement governed the requirements for modifying spousal support. 59 Va. App. at 29-30. However, the matter before us is a sanction for contempt, not an appeal from an award of spousal support or modification of a property settlement agreement. Accordingly, these cases do not support husband's contention that the parties' PSA limited the court's authority to fashion a sanction for contempt.

Here, at the time that the PSA was executed, the parties intended that the condominiums would be sold for their fair market value and the proceeds would be divided equally. However, because of husband's noncompliance, the properties were sold at foreclosure, resulting in reduced proceeds. The court enforced Paragraph 7(E) of the PSA by ordering that the net proceeds of the foreclosure sale be divided in half and distributed to each party. Contrary to husband's argument, however, Paragraph 7(E) of the PSA did not preclude the court's discretionary authority to order an additional monetary award to wife — consisting of the difference between the properties' fair market values and the foreclosure proceeds — as a sanction for husband's noncompliance with his financial obligations under the divorce decree. See Kahn v. McNicholas, 67 Va. App. 215, 228-29 (2017) (holding that the equitable distribution statute, Code § 20-107.3(K)(2), authorizes enforcement of monetary awards through circuit court's contempt power).

Husband also argues that wife's evidence concerning the condominiums' fair market value at the time they were sold was speculative. Wife's evidence consisted of unrebutted testimony from John Murphy, who qualified without objection as an expert in the field of real estate appraisal. Murphy prepared a retrospective appraisal of the properties at the time they were sold at foreclosure and included the value of comparable properties.

"[E]xpert testimony is the most expedient, and, in fact, the preferable method for [valuing marital property]." Stratton v. Stratton, 16 Va. App. 878, 883 (1993) (second alteration in original) (quoting Lassen v. Lassen, 8 Va. App. 502, 507 (1989)). Ultimately, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." McKee v. McKee, 52 Va. App. 482, 492 (2008) (*en banc*) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138 (1995)). The court found Murphy's testimony credible and his opinions reasonable. Therefore, under our standard of review, we defer to the trial court's factual determination of the fair market value of the condominiums, given the credible evidence in the record supporting that determination.

Additionally, husband argues that the court's calculation was "incomplete and invalid" because it did not include "all costs that would have been incurred if the condominiums had been sold on the open market." At husband's request, and consistent with his own evidence, the court's calculation included a "reasonable real estate broker commission" of six percent, but it did not include other "ordinary costs" such as "taxes, assessments, and escrow and settlement charges." The reduction for a hypothetical realtor's commission corresponded with the reduction for the actual commissioner of sales' commission. Based on this record, the court did not abuse its discretion in fashioning a sanction that deducted a six percent realtor's commission to correspond to the similar deduction for the commissioner of sale's commission.

A sanction imposed on a party held to be in civil contempt generally may serve to compensate the complainant for losses resulting from the contemnor's past noncompliance. See Hackler, 44 Va. App. at 65 ("The punishment in a civil contempt proceeding 'is adapted to what is necessary to afford the injured party remedial relief for the injury[.]'" (quoting Rainey v. City of Norfolk, 14 Va. App. 968, 974 (1992))). Here, the court acted within its discretion to impose a

sanction to compensate wife for the financial loss that resulted from husband's noncompliance with his obligations to pay the condominium mortgages. Accordingly, we affirm the sanction award.

### D. Attorney's Fees Award

Husband asserts the court erred in awarding wife excessive attorney's fees. The parties' PSA expressly provided for attorney's fees associated with future modification and enforcement proceedings. Wife presented an affidavit of attorney's fees incurred in connection with the show cause action and her motion to modify spousal support and attached a summary of charges. The court found that wife's claim was reasonable and that an equal division of fees between the two actions was reasonable as well. It awarded her $22,948.58 in attorney's fees for the rule to show cause.

This Court reviews an award of attorney's fees for an abuse of discretion. See Graves v. Graves, 4 Va. App. 326, 333 (1987). Here, wife's counsel was required to document the many provisions of the PSA that husband violated and the financial cost that resulted, research the process of obtaining service of process abroad, and participate in protracted court proceedings. Further, the overall length of the case extended to sixteen months, from the initial filing in October 2018 to completion in March 2020. The record reflects that wife's show cause action and motion to modify spousal support were filed simultaneously and had many overlapping issues. For these reasons, we find that the court did not abuse its discretion in dividing wife's claim for attorney's fees evenly between the two actions and awarding her $22,948.58 for the contempt proceedings.

Wife also requests an award for the attorney's fees she expended on appeal. "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018); see Rule 5A:30(b). Although wife prevailed, we do not find that husband's appeal was "frivolous or lacked substantial merit," or that the "equities of the case" favor an award. Rule 5A:30(b)(3)-(4). Therefore, we decline wife's request.

- 18 -

CONCLUSION

For the foregoing reasons, we find that husband was properly served with the show cause rule and the evidence was sufficient to find him in willful contempt. We also hold that the court did not err in imposing sanctions or awarding wife her attorney's fees. Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>